[Civ. No. 22767. Third Dist. Feb. 3, 1984.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 22, AFL-CIO, Plaintiff and Respondent, v.
SACRAMENTO CITY UNIFIED SCHOOL DISTRICT,
Defendant and Appellant.

706

COUNSEL

William E. Brown, Penn Foote and Brown & Conradi for Defendant and Appellant.

Van Bourg, Allen, Weinberg & Roger and W. Daniel Boone for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—Sacramento City Unified School District (District) appeals from a judgment granting a writ of mandate requiring District to provide additional employment benefits and retirement contributions for certain classified employees for work performed during summer sessions 1977-1982.

The employees involved in this appeal are classified bus drivers I, bus drivers II, and bus attendants (hereafter collectively referred to as bus drivers or classified employees). They are represented by plaintiff Service Employees International Union (Union). The benefits at issue are employer contributions to the Public Employees Retirement System (PERS), service credit towards retirement, sick leave and vacation leave.

The bus drivers employed by District during summer sessions 1977-1982 were employees of the District for the regular academic years preceding each of the summer sessions. Education Code section 45102 provides that with respect to a classified employee's summer employment, the employee shall receive on a pro rata basis compensation and benefits applicable to the classification during the regular academic year. For summer employment, the bus drivers were compensated by a salary proportionate to the hourly rate they received during each preceding academic year; they were not credited with earned vacation or sick leave and District made no contributions to PERS on their behalf.

On behalf of the bus drivers, Union brought suit claiming Education Code section 45102 mandates that for summer work bus drivers receive sick leave and vacation credit and that District make contributions to PERS for their retirement accounts. The trial court agreed and entered judgment in favor of Union.

I

Education Code section 45102 states in relevant part: "For the purposes of this section every classified employee shall be deemed to be employed

for 12 months during each school year regardless of the number of months in which he is normally in paid status. Any school district which, in any school year, maintains school sessions at times other than during the regular September-June academic year shall assign for service during such times regular classified employees of the district. . . . No classified employee whose regular yearly assignment for service excludes all, or any part of, the period between the end of the academic year in June to the beginning of the next academic year in September, shall be required to perform services during such period. *A classified employee shall, for services performed as herein provided, receive, on a pro rata basis, not less than the compensation and benefits which are applicable to that classification during the regular academic year."* (Italics added.)

District argues summer school employment for bus drivers constitutes overtime, for which no retirement contributions need be made and for which no contractual benefits (i.e., sick leave and vacation credit) accrue. We agree with District's position in regard to retirement benefits. We disagree, however, with District's position that summer session employees are not entitled to pro rata vacation and sick leave credit. Finally, we hold that Union's claim of vacation and sick leave credits for summer sessions 1977 and 1978 is barred by the statute of limitations.

## A. *Retirement Benefits*

■ District concedes it has not made retirement contributions to PERS for classified employees who worked summer sessions 1977-1982. District asserts it is not required to make PERS contributions for summer employment because such contributions would not benefit the bus drivers. Noting the retirement benefits applicable to classified employees are defined by Government Code section 20000 et seq.,[1] District argues two essential elements of the formula determining retirement benefits, *final compensation* and *credited service* (see § 21251.13), are not affected by summer employment. We agree.

"Final compensation" is defined in section 20024.01 as "the highest average annual compensation earnable by a member during the three consecutive years of employment immediately preceding the effective date of his retirement or the date of his last separation from state service if earlier or during any other period of three consecutive years during his membership in the system which he designates in his application for retirement, . . ."

---

[1]All further statutory references are to sections of the Government Code unless otherwise indicated.

Overtime pay is excluded from "final compensation" by section 20025.2 which states in relevant part: "When the compensation of a member is a factor in any computation to be made under this part there shall be excluded from such computations any compensation based on overtime put in by a member whose service retirement allowance is a fixed percentage of final compensation for each year of credited service. [¶] For the purposes of this part, *overtime is the aggregate service performed by an employee . . . in excess of the hours of work considered normal for employees on a full-time basis,* and for which monetary compensation is paid." It is clear that for purposes of computing a classified employee's final compensation as one determinant of retirement benefits, "overtime" has a specific and limited definition; i.e., work "in excess of the hours of work considered normal for employees on a full-time basis, . . ." (§ 20025.2, italics added.)

Summer school work for the affected bus drivers is "in excess of the hours of work considered normal for employees on a full-time basis, . . ." Section 20862 provides in pertinent part: "One year of service credit shall be granted for service rendered in a fiscal year in full-time employment for any of the following: [¶] (b) Ten months of service for persons employed on a monthly basis." Accordingly, a full-time bus driver's work is defined in terms of the 10-month period covering the regular September-June academic year. Indeed, classified employees are not required to work summer sessions (Ed. Code, § 45102). Thus the June-September period between academic years is excluded from the normal work year and wages earned for summer employment are not included in a member's final compensation.

Union contends the statutory definition of overtime in section 20025.2, when read together with the definition of overtime in the parties' collective bargaining agreement, demonstrates overtime should be considered not as work in excess of the normal work year, but rather as work in excess of the normal hours per work day or work week. Article VIII, section 4.1.1 of the collective bargaining agreement states: "Overtime is ordered and authorized working time in excess of the eight (8) hours in one (1) workday or forty (40) hours in one (1) workweek. When an employee's schedule is reduced to seven (7) hours per workday [i.e., summer work], all hours worked in excess of seven (7) hours per workday or thirty-five (35) hours in one (1) workweek shall be overtime." However, there is nothing in section 20025.2 to suggest the statutory definition of "overtime" is subject to qualification by a collective bargaining agreement entered into between a school district and its employees. To accept Union's argument would expand the statutory definition of overtime to encompass a variety of meanings and would result in similarly circumstanced employees receiving disparate retirement benefits because the final compensation upon which such

benefits are based would be subject to the vagaries of each employee's bargaining agreement. For purposes of computing a full-time classified employee's final compensation as one determinant of retirement benefits, the definition of overtime in section 20025.2 is controlling.

Union argues that if summer work is considered "overtime," then those bus drivers who worked summer sessions 1977-1982 were entitled to wages at one and one-half times their regular rate of pay. Article VI, section 9 of the collective bargaining agreement provides that "An employee who works authorized overtime shall be compensated at a rate equal to one and one-half (1½) times the regular rate of pay."

The definition of overtime in section 20025.2 is not to be confused with the contractual definition of overtime in the collective bargaining agreement which governs the rate of pay of an employee who works more than the normal hours in a workday or workweek. The statutory definition of overtime is not concerned with the rate of pay for work in excess of that considered normal; rather it establishes that *all* work in excess of that considered normal, including summer work and overtime earned during both the academic year and summer session is excluded from the computation of an employee's final compensation and thus from the determination of retirement benefits.

The conclusion that summer employment constitutes overtime within the meaning of section 20025.2 finds support in the PERS guidelines which emphasize that "[o]vertime is usually any service in excess of what is considered by the *employer* to be full-time for the position." (Italics in original.) In this case, not only does District consider summer employment to be overtime within the meaning of section 20025.2, but the Legislature has defined the normal year for those classified employees involved in this appeal as based upon a 10-month period. (See § 20862, subd. (b).)

As summer work is "overtime" within the meaning of section 20025.2, contributions to PERS for the benefit of employees performing summer work would not affect the employees' retirement benefits and are not required to be made by District.

We turn to the "service credit" part of the formula which determines a classified employee's retirement benefits. Section 20861 states: "Credit for more than one year of service shall not be allowed for service rendered in any fiscal year." In granting credit, section 20862 equates "Ten months of service for persons employed on a monthly basis" with "One year of service . . . rendered in a fiscal year in full-time employment . . . ." District

has credited all full-time employees involved in this appeal with a full year of service retirement credit for the work performed in each of the academic years 1977 through 1982. No additional service credit could be earned for summer employment, regardless of additional employer and employee contributions.

The discussion to this point has expressly focused on full-time classified employees who work a 10-month academic year (see Ed. Code, § 45127). Union also represents some part-time bus drivers who work a 10-month academic year but less than 40 hours per week. As to them we reach similar conclusions regarding final compensation and service credit.

Like full-time bus drivers, part-time drivers are not required to work summer sessions. (Ed. Code, § 45102.) Summer employment for part-time drivers is thus work "in excess of the hours of work considered normal." Therefore, as overtime, summer wages are excluded from the part-time employees' final compensation. (§ 20025.2.) Moreover, section 20864 provides, that for the purpose of calculating retirement benefits based upon part-time service, "compensation earnable," as used to determine "final compensation" under section 20024.01, "shall be taken as the compensation which would have been earnable if the employment had been on a full-time basis and the member had worked full time." Therefore, section 20025.2 providing that "overtime is the aggregate service performed by an employee . . . in excess of the hours of work considered normal for employees on a fulltime basis" applies as well to part-time bus drivers.

Regarding service credit, section 20863 sets forth the formula for determining service credit for part-time classified employees. This section provides that "credit for service rendered on a part-time basis in each fiscal year shall be based on the ratio that the service rendered bears: [¶] (a) To one academic year if rendered on an academic year basis. [¶] (b) To 10 months if rendered on a monthly basis. . . ." This section makes no provision for additional service credit for summer employment and Union has cited no authority which requires additional service credit be given for overtime work. We conclude part-time bus drivers are not entitled to additional service credit for summer employment.

Retirement contributions by District for summer session employment would enhance neither the service credit nor the final compensation of bus drivers employed during the academic years preceding their summer employment. The trial court erred in ruling District was required to make retirement contributions based upon the classified employees' summer session 1977 through 1982 employment.

### B. *Sick Leave and Vacation Credit*

■ District contends that as summer employment for bus drivers is "overtime," no contractual benefits, i.e., sick leave and vacation credit are earned for summer employment.

The definition of overtime in section 20025.2 applies to the computation of retirement benefits; it has no application to benefits due under the collective bargaining agreement. The collective bargaining agreement provides that employees shall earn one day of sick leave for each calendar month of service; vacation credits are accumulated on the basis of hours worked exclusive of overtime. Union does not seek vacation and sick leave credits for hours worked by the bus drivers during summer session in excess of seven hours a day or thirty-five hours a week which qualifies as overtime under the collective bargaining agreement. Rather, Union seeks vacation and sick leave credits for the normal or straight-time hours of summer service by those affected employees. To the extent summer session employment adds to the number of hours or months worked, summer session employees are entitled under the collective bargaining agreement to sick leave and vacation credit on a pro rata basis. (Ed. Code, § 45102.)

### II

■ We uphold District's contention that Union's claim of benefits for summer sessions 1977 and 1978 is barred by the statute of limitations.

Union argues it did not learn of District's breach of contract, i.e., its failure to provide sick leave and vacation credits for summer-sessions 1977 forward until September 1981. Obviously District's obligation to provide sick leave and vacation credit for summer session 1977 accrued no later than the end of that session. The same holds true for District's omission to provide such credits for summer session 1978. Union filed its action on October 6, 1982, which, as to any breach of obligations arising from work performed in summer sessions 1977 and 1978 is beyond the four-year period of limitations which governs actions on a contract in writing. (See Code Civ. Proc., § 337, subd. 1.)

At oral argument, Union urged District was estopped to assert the statute of limitations, claiming District engaged in dilatory tactics after Union learned of the breach. However, District raised the statute of limitations by demurrer and Union neither pleaded nor sought leave to plead estoppel as a defense thereto. We are dealing here with parties of equal bargaining power. When Union learned of the breach of contract in September 1981,

it was obliged to take timely action in its own interest and that of its members. Failing that, the claims for benefits arising out of summer session employment in 1977 and 1978 are barred. The demurrer should have been sustained as to benefits sought on account of summer session employment in 1977 and 1978. (See *Gamboa* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1971) 20 Cal.App.3d 61, 68-69 [97 Cal.Rptr. 471]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 783, p. 2398.)

Insofar as the judgment (1) mandates District to make PERS contributions and provide service credit for classified employees who worked summer sessions 1977 through 1982, and (2) orders District to provide these employees with sick leave and vacation credit for summer sessions 1977 and 1978, it is reversed and the matter is remanded to the trial court with directions to enter judgment in favor of District on these claims. In all other respects the judgment is affirmed. Each side will bear its own costs on appeal.

Carr, J., and Sparks, J., concurred.

A petition for a rehearing was denied February 29, 1984, and respondent's petition for a hearing by the Supreme Court was denied April 4, 1984. Bird, C. J., was of the opinion that the petition should be granted.