[No. C006855. Third Dist. May 7, 1991.]

CITY OF SACRAMENTO, Plaintiff and Respondent, v.
PUBLIC EMPLOYEES RETIREMENT SYSTEM, Defendant and
Appellant.

1472

COUNSEL

John K. Van de Kamp, Attorney General, Richard M. Frank and Cathy Christian, Deputy Attorneys General, for Defendant and Appellant.

Davis, Reno & Courtney, Alan C. Davis and Cindy O'Hara-Varela as Amici Curiae on behalf of Defendant and Appellant.

James P. Jackson, City Attorney, and William P. Carnazzo, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

DAVIS, J.—

## INTRODUCTION

This appeal presents the novel issue of whether the extra one-half hour overtime "premium" pay required by the federal Fair Labor Standards Act (FLSA), 29 United States Code sections 201-219, is the equivalent of "overtime" under the Public Employees' Retirement Law (PERL), Government Code section 20025.2, which is defined as payment for service performed "in excess of the hours of work considered normal for employees on a full-time basis . . . ."[1] Under the state retirement system, participating employers are required to make contributions based upon a percentage of employee "compensation." Overtime is statutorily excluded from "compensation." Appellant Public Employees Retirement System (PERS) challenges the trial court's rejection of the determination by its board of administration (Board) that federally mandated overtime premium pay to respondent City of Sacramento's (City) firefighters is not the equivalent of "overtime" within the meaning of the PERL but is "compensation" to the extent that those hours fall within the employees' normal work schedule. As a result of the trial court's decision, the City is no longer required to make contributions for the FLSA "premium."

We reverse. The FLSA does not preempt the state's ability to define "overtime" in a manner inconsistent with federal law where there is no

---

[1] All further undesignated statutory references are to the Government Code.

actual conflict with or frustration of the purposes of the federal minimum wage and maximum hour law. As a result, PERS may characterize federal overtime pay as nonovertime compensation for the purposes of determining employer contributions to the state retirement system where the federal premium is received for performing work which is not in excess of that considered normal. Because the City's firefighters are normally required to work 10 hours more than the federal maximum hour standard, the FLSA premium received for that work is "special compensation for performing normally required duties." Finally, we hold that PERS's interpretation does not violate article XVI, section 17, subdivision (b) of the California Constitution.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to contract between PERS and the City, individuals who became City employees on or after January 29, 1977, became members of PERS and eligible for specified benefits upon their retirement.[2] At the time, the provisions of the federal FLSA, 29 United States Code sections 201-219, were inapplicable to the states. As a result of the decision of the United States Supreme Court in *Garcia* v. *San Antonio Metro. Transit Auth.* (1985) 469 U.S. 528 [83 L.Ed.2d 1016, 105 S.Ct. 1005], FLSA's overtime and minimum wage requirements became applicable to public sector employers and employees, effective April 15, 1986.

In late 1987, PERS issued its circular letter No. 100-389 stating its position that FLSA premium pay must be reported as nonovertime "compensation" for PERS purposes if the "overtime" is within the normal workweek. PERS rationale was that "while the FLSA determines at what point overtime must be paid to employees, 'overtime' under the FLSA is not the same as overtime as defined by the Retirement Law. Since our definition [as service in excess of the hours of work considered normal] has not been changed, employers must continue to report all compensation paid for normal full time service. Such compensation must include 'overtime' as required by the FLSA if 'overtime' is within the normal workweek established for PERS purposes. The employer does have the authority, within a range established by the Board, to determine what constitutes normal full-time service."

---

[2] Local firefighters and safety officers are included within the PERS system if they are employed by a contracting agency which has been included within the system by contract. (§§ 20019, 20021.) Local public agencies, such as the City, may elect to participate in the state retirement system and are thereafter subject to its requirements. (§§ 20009, 20450 et seq.)

The City refused to comply with this interpretation and eventually filed a complaint for declaratory relief that FLSA overtime premium payments constitute overtime as defined under sections 20022 and 20025.2.[3]

Thereafter, the City filed a motion for summary adjudication of issues with supporting declarations and PERS filed its motion for summary judgment.

The parties stipulated to the following facts underlying the payment of the City's firefighters:

The City's pay period consists of 14 consecutive days, beginning Saturday at 12:01 a.m. and ending on Friday at midnight. The payday is on the Tuesday following the close of the preceding pay period. Normal earnings are paid biweekly following the end of each pay period.

The fire duty schedule for fire suppression employees provides for 24-hour shifts organized around a continuous 12-day duty cycle. Within those 12 days, the work duty cycle is on-off-on-off-off-on-off-on-off-off-off-off. There are three different platoons of firefighters, each of which has a different total and average of hours worked on a weekly and biweekly basis. As a result of the variations in these shifts within the 12-day cycle, an individual firefighter's assigned duty shift will require him or her to work for either 96, 104, 112, or 120 hours in any given pay period. Firefighters are therefore paid on an "average" basis of 112 hours per pay period regardless of the actual hours worked. This arrangement is part of the labor agreement between the City and the firefighters' union.

As discussed below, for the purposes of the FLSA, the City has selected a 24-day work period against which to measure its overtime obligations. Under the 24-day work period, the City is obligated to pay federal premium wages to its firefighters for all hours worked in excess of 182. Under federal regulations, only hours actually worked count toward the 182-hour limit.

Under the City's fire duty schedule, firefighters are regularly scheduled to work 192 hours within the 24-day statutory work period. The 10 "extra" hours must be paid at the "overtime" rate of time and one-half the "regular rate of pay," with the extra half-time pay denominated the FLSA premium. The employee may take the FLSA premium as either cash or as "compensatory time off."

---

[3] PERS agreed to suspend procedures to terminate the City's contract with it pending final resolution of this issue.

Noting that the facts were not in dispute regarding either motion, the trial court granted summary adjudication on nine of the City's twelve requested issues and denied PERS's motion.[4] The parties stipulated that the court's ruling had the effect of granting judgment in the City's favor and requested that judgment be entered accordingly. Judgment was entered in favor of the City and this appeal followed.

### STANDARD OF REVIEW

■ The Board's interpretation of the PERL is to be accorded great weight unless clearly erroneous. (*City of Fremont* v. *Board of Administration* (1989) 214 Cal.App.3d 1026, 1033 [263 Cal.Rptr. 164] [rev. den. Jan. 4, 1990].) Where the material facts are not disputed and the question involves only the interpretation and application of the PERL, a question of law is presented on which the appellate court must make an independent determination. (*Id.* at p. 1030.)

### DISCUSSION

*The Public Employees' Retirement Law*

Under the PERL, the determination of what benefits and items of pay constitute "compensation" is crucial to the computation of an employee's ultimate pension benefits. The pension is calculated to equal a certain fraction of the employee's "final compensation" which is multiplied by a fraction based on age and length of service. (§§ 21252.01, 21252.02.)[5] "Final compensation" is the "highest average annual compensation earnable by a

---

[4] The City also requested, and was denied, summary adjudication on the following issue: "Whether PERS may, consistent with the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) unilaterally impose a requirement that the City include FLSA overtime premium pay within the compensation base, and pay contributions thereon, without the City and the union representing City fire suppression employees satisfying their bilateral bargaining duty[.]" The basis for the trial court's denial of their motion on this issue was that "[w]hether City and its union satisfy them is not the responsibility of PERS." The City attempts to raise this issue again on appeal. We do not address it. The City did not file a notice of cross-appeal. (Cal. Rules of Court, rule 1(a), (f).) PERS's appeal addresses only those orders adverse to it and a determination of these issues will not in any way be affected by the remaining portion of the judgment. Accordingly, severance of the issue is possible and the judgment remains final as to the City. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 152-153, p. 160.)

[5] The PERS plan is a "defined benefit plan." The formula for determining a member's retirement benefit takes into account (1) years of service; (2) a percentage figure based on age on the date of retirement; and (3) "final compensation" as defined in Government Code section 20024.01. For example, the monthly benefit for a 60-year-old employee who retires with 20 years' service at a "final compensation" rate of $2,000 per month and who is covered under a "2% at age 60" plan, would be $800 (2% × 20 × $2,000).

member during the three consecutive years of employment immediately preceding the effective date of his retirement" or other designated consecutive three-year period.[6] (§ 20024.01.) Both the employer and the employee are required to make contributions to the system, based on a percentage of "compensation." The City's PERS agreement specifies a 9 percent rate to be paid by firefighters. The employer rate is not fixed but is set annually after periodic actuarial analysis.

Calculation of "compensation earnable" is not based on individual efforts, but is defined as "the average monthly compensation as determined by the board upon the basis of the average time put in by members in the same group or class of employment and at the same rate of pay. . . ." (§ 20023.) "Compensation" includes, inter alia, "(1) the remuneration paid in cash out of funds controlled by the employer, . . . (8) any special compensation for performing normally required duties such as holiday pay, bonuses (for duties performed on regular work shift), . . . and (12) any other payments the board may determine to be compensation." (§ 20022, subd. (a).)

Compensation does not include ". . . (7) payments for unused vacation, sick leave, or compensating time off . . . ; (9) payments for overtime, including pay in lieu of vacation or holiday; (10) special compensation for additional services outside regular duties, such as standby pay, callback pay . . . ; and (15) any other payments the board may determine not to be compensation." (§ 20022, subd. (b).)

Section 20025.2 reiterates the exclusion of overtime from compensation. "When the compensation of a member is a factor in any computation to be made under this part there shall be excluded from such computations any compensation based on overtime put in by a member whose service retirement allowance is a fixed percentage of final compensation for each year of credited service. . . ." Overtime is defined as "the aggregate service performed by an employee as a member for all employers and in all categories of employment in excess of the hours of work considered normal for employees on a full-time basis, and for which monetary compensation is paid." (§ 20025.2.)

---

[6]This definition is applicable to determine the final compensation of both state members and local members, such as the City's firefighters, who are employees of a contracting agency. For those state members who retire or die on or after July 1, 1991, however, "final compensation" for determining pension or benefits is now defined to mean the highest annual compensation which was earnable by the state member during any consecutive 12-month period. (§ 20024.002.)

■■■■■■■■■■■■■■■

*The Fair Labor Standards Act*

Unlike the PERL, the FLSA defines overtime not as hours in excess of what is considered "normal," but in relation to the maximum number of hours permissible under a given "workweek" or "work period." Employees are generally permitted to work a maximum of 40 hours per workweek "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." (29 U.S.C. § 207(a)(1).)

Under FLSA, a partial overtime pay exemption is provided for fire protection and law enforcement personnel. (29 U.S.C. § 207(k); 29 C.F.R. § 553.201.)[7] Public agencies employing firefighters are authorized to select a "work period" of at least seven but no more than twenty-eight days. Within these ranges, the work period "can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. . . ." (29 C.F.R. § 553.224(a).) A formula for determining maximum hours within that range is provided. The maximum non-overtime hours allowed where the work period is less than 28 days is the "number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours . . . bears to 28 days." (29 U.S.C. § 207(k)(2).) Application of this formula yields a maximum hour standard for firefighters of 182 hours for a work period of 24 days, such as that selected by the City in this case. (29 C.F.R. 553.230(c).) For any work in excess of those hours, the employee must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed." (29 U.S.C. § 207(k).)

FLSA does not prohibit employers and employees from agreeing to a normal work schedule in excess of the statutory maximum hours. There is nothing in FLSA which would, for example, prohibit an employer and an employee covered under FLSA's 40-hour maximum workweek from agreeing to work 50 hours each week. All that is required is that the employer pay the 10 hours of federal premium overtime. The regulations make this clear: "Since there is no absolute limitation in the Act . . . on the number of hours that an employee may work in any workweek, he may work as many hours a week as he and his employer see fit, so long as the required

---

[7] As a general rule, each workweek stands alone and an employer may not average the employee's hours over several weeks to avoid paying overtime. (29 C.F.R. § 778.104.) Firefighters and law enforcement personnel, however, are allowed to balance their hours of work over the entire work period. (29 C.F.R. § 553.231 (b).)

overtime compensation is paid him for hours worked in excess of the maximum workweek prescribed . . . ."[8] (29 C.F.R. § 778.102.)

### *FLSA Does Not Preempt PERS's Interpretation*

■ As a threshold matter, we reject the trial court's ruling that FLSA's designation of the hours in excess of 182 within the 24-day work period as "overtime" hours for which a premium must be paid preempts "any state law or administrative interpretation which would characterize such pay as other than 'overtime.'"

The California Supreme Court has recently reviewed the principles governing a preemption analysis. (*Screen Extras Guild, Inc.* v. *Superior Court* (1990) 51 Cal.3d 1017 [275 Cal.Rptr. 395, 800 P.2d 873].) ■ "Preemption cases may be divided into two types: substantive or jurisdictional. Substantive preemption is based on federal protection of conduct that state law attempts to regulate or penalize. (*Railroad Trainmen* v. *Terminal Co.* (1969) 394 U.S. 369, 383, fn. 19 [22 L.Ed.2d 344, 89 S.Ct. 1109].) Jurisdictional preemption is based on protecting the primary jurisdiction, within a particular sphere of conduct, of federal regulatory bodies." (51 Cal.3d at p. 1022, fn. omitted.)

A different analysis attends each type of preemption. Jurisdictional preemption "involves balancing the competing federal and state interests at stake. . . . [¶] On the other hand, if state law regulates conduct that is actually protected by federal law, preemption follow[s] not as a matter of protecting the primary jurisdiction of federal regulatory bodies, but as a matter of substantive right. Where the issue is one of substantive conflict with federal law, '[t]he relative importance to the State of its own law is not material . . . for the Framers of our Constitution provided that the federal law must prevail.' (*Brown* v. *Hotel Employees, supra,* 468 U.S. at p. 503 . . . , citing *Free* v. *Bland* (1962) 369 U.S. 663, 666 . . .) In such cases, state action is preempted, without balancing state and federal interests, by direct operation of the supremacy clause of the United States Constitution. (U.S. Const., art. VI, [cl.] 2; *Brown* v. *Hotel Employees, supra,* 468 U.S. at p. 501. . . .)" (51 Cal.3d at p. 1023.)

■ Because PERS's interpretation of the federal premium under California's statutory scheme for providing pension benefits for its public employees does not "implicate the jurisdiction of federal regulatory bodies," jurisdictional preemption is not before us. (51 Cal.3d at p. 1023.)

---

[8] Where the word "workweek" is used in part 778 of the regulations, the words "work period" should be substituted. (29 C.F.R. § 553.233.)

In addressing the substantive preemption issue in this case, "our task is simply to determine whether there is an actual conflict" (51 Cal.3d at p. 1023) between PERS's characterization of FLSA "overtime" hours as non-overtime hours for the purposes of assessing employer contributions to the state retirement system. ■ Preemption will be found if there exists either an actual conflict or if the state law "frustrates the specific objectives underlying a federal enactment. . . ." (*Id.* at p. 1024.) Preemption is not appropriate, however, where the state law is "merely in general tension with broad and abstract goals of federal legislation . . . . [Citations.] . . . The 'actual conflict' versus 'general tension' inquiry focuses on whether the purportedly conflicting federal interest is sufficiently well defined and rooted in federal enactments to give rise to preemption." (*Ibid.*)

■ With these principles in mind, we examine the City's argument that an actual conflict sufficient to invoke the doctrine of preemption exists because FLSA declares that overtime must be paid for hours in excess of 182 during a 24-day work period. We find this argument unpersuasive. The mere fact that FLSA designates hours in excess of 182 as overtime is not sufficient to create an actual conflict between 2 regulatory schemes, the aims and purposes of which are dissimilar. We hold that a characterization of FLSA overtime as nonovertime compensation for purposes of determining contributions to the state retirement system neither actually conflicts with nor frustrates the specific purposes of the FLSA.

■ It is well established that the FLSA does not preempt state regulation of wages, hours and working conditions. (*Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 602-605 [71 Cal.Rptr. 739] [Industrial Welfare Commission orders regulating minimum wages, maximum hours and working conditions of women and minors in agricultural occupations not preempted].) FLSA expressly provides that none of its provisions shall excuse "noncompliance with any Federal or State law or municipal ordinance establishing a . . . maximum workweek lower than the maximum workweek established under this chapter . . . ." (29 U.S.C. § 218 (a).) As noted in *Rivera*, FLSA's section 218 is a statement of federal intent not to interfere with more protective state regulation which is "so prominent as to foreclose any possibility of misapprehensions touching congressional intent" to preempt. (265 Cal.App.2d at p. 603; see also, *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 727, 729 [166 Cal.Rptr. 331, 613 P.2d 579], cert. denied 449 U.S. 1029 [66 L.Ed.2d 492, 101 S.Ct. 602] [approving *Rivera* and recognizing that FLSA specifically authorizes states "to go beyond the federal legislation in adopting more protective regulations for the benefit of employees."].)

Where state law is more beneficial to an employee than the FLSA, the state law must apply. As a result, the FLSA does not preempt the Commonwealth of Puerto Rico from defining "outside salesman" or the "outside salesman" exemption in a manner different from that contained in federal law and regulations. (*Maldonado* v. *International Business Machines Corp.* (D.P.R. 1972) 56 F.R.D. 452, 455.)

FLSA has also been held not to preempt a regulation by the Minimum Wage Board of the Commonwealth of Puerto Rico, which required that employees who had worked at least 30 hours a week be paid for 44 hours per week and which did not require overtime unless employees worked in excess of 48 hours per week. (*Doctors Hospital, Inc.* v. *Silva Recio* (1st Cir. 1977) 558 F.2d 619.) Relying on 29 United States Code section 218, the court found that FLSA specifically contemplated state regulation. Puerto Rico's law was also designed to protect employees from exploitation; accordingly, it did not frustrate or impair federal objectives. Because application of the state regulation resulted in higher wages to the employees who had worked a maximum of 37½ hours per week, no conflict between the two statutory schemes was found to exist. (*Id.* at pp. 622-623; see also, *Maccabees Mut. Life Ins. Co.* v. *Perez-Rosado* (1st Cir. 1981) 641 F.2d 45 [FLSA's exemption of "outside salesmen" from its protective wage benefits does not preempt Puerto Rican statutes from providing for vacation pay and bonuses to "outside salesmen"].)

The United States Supreme Court has recognized that "overtime" is not a word of art. (*Bay Ridge Operating Co.* v. *Aaron* (1948) 334 U.S. 446, 465 [92 L.Ed. 1502, 1517, 68 S.Ct. 1186].) "Sometimes it is used to denote work after regular hours, sometimes work after hours fixed by contract at less than the statutory maximum hours and sometimes hours outside of a specified clock pattern without regard to whether previous work has been done, e.g., work on Sundays or holidays." (*Ibid.*)

■ Since state regulation which is more protective of the worker in the precise area of FLSA's concern—minimum wages and maximum hours—is not preempted by FLSA, it follows that FLSA does not preempt regulation in an entirely different subject matter area such as public retirement. The purposes of the state and federal acts are wholly different. The PERL is designed to promote economy and efficiency in public service by providing a method for replacing "superannuated or otherwise incapacitated" employees without hardship or prejudice. (§ 20001.) "The pension system serves as an inducement to enter and continue in state service . . . ." (*Quintana* v. *Board of Administration* (1976) 54 Cal.App.3d 1018, 1021 [127 Cal.Rptr. 11].) ■ By contrast, Congress's purpose in requiring overtime pay un-

der the FLSA "was to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." (*Bay Ridge Operating Co.* v. *Aaron, supra,* 334 U.S. at p. 460 [92 L.Ed. at p. 1514].)

PERS's interpretation of the FLSA overtime premium as nonovertime compensation to the extent it is earned for hours considered normal in no way threatens implementation of the act. FLSA was not intended to preclude the state from requiring retirement contributions based on its overtime premium to employees who are normally required to perform services in excess of the federal maximum hour overtime standards. As discussed below, PERS's interpretation is consistent with established precedent that contributions be made for payments received for performing normally required duties. Under these circumstances, PERS is not preempted from defining "overtime" in a manner which may be, and in this case is, different in purpose and effect, from the use of the term in the FLSA.

*The FLSA Premium Is Properly Characterized as Compensation*

Having determined that federal law presents no obstacle to PERS's definition of the FLSA premium as nonovertime compensation, we turn to its proper characterization under the PERL. We hold that the premium does not constitute "overtime," that it is properly characterized as "compensation" and that its characterization as such does not distort the compensation base or the legislative scheme.

In determining whether the FLSA premium is overtime or compensation, the pivotal issue is what are the "hours considered normal" for the City's firefighters. Since *Rose* v. *City of Hayward* (1981) 126 Cal.App.3d 926 [179 Cal.Rptr. 287], "'it has been beyond dispute that pay received for the performance of all normally required duties . . . constitutes compensation under PERS law.'" (*City of Fremont* v. *Board of Administration, supra,* 214 Cal.App.3d at p. 1031.)

In *Rose* v. *City of Hayward, supra,* 126 Cal.App.3d at pages 940-941, PERS and the trial court characterized the double-time premium holiday pay received by city police officers and fire fighters who were regularly required to work on five holidays per year as overtime. On appeal, this interpretation was held to be clearly erroneous under section 20025.2's established definition of overtime work as service performed "'in excess of the hours of work considered normal . . . . [Italics omitted.]'" The City's administrative rules plainly stated that these employees were regularly re-

quired to work on legal holidays. Accordingly, "the hours worked by a police officer or fire fighter on any 'legal holiday' designated by the city are not 'overtime work' because they are part of the normal hours of work for those employees, rather than in excess of such hours." As such, the holiday pay cannot be excluded from the compensation upon which their retirement benefits are based. The fact that not all employees worked the same holidays was irrelevant, where they were all required to work five holidays. (*Id.* at p. 941.)

Following *Rose*, in *City of Fremont* v. *Board of Administration, supra*, 214 Cal.App.3d at page 1028, we affirmed the Board's determination that year-end straight-time cash outs of unused compensatory time off in lieu of holiday pay by city police constitute "compensation" under PERL. The City argued that the cash outs were more in the nature of payments statutorily excluded from compensation for "overtime, including pay in lieu of vacation or holiday; . . ." We rejected this argument. In 1983, in response to *Rose*, and as a matter of clarifying the definition of "compensation" within the meaning of the PERL, the Legislature amended section 20022 to add, inter alia, what is now subdivision (a)(8) (" 'Compensation' includes: . . . any special compensation for performing normally required duties such as holiday pay . . ."). If the officers accepted cash (holiday pay) rather than compensatory time off, the case would have been governed by *Rose*. Accordingly, the cash out of earned compensatory time off came within the definition of compensation as "special compensation for performing normally required duties." (§ 20022, subd. (a)(8).)

The City does not dispute that its firefighters are "regularly scheduled to work 192 hours within the 24-day [FLSA] statutory work period." It argues that the FLSA premium is "overtime" as that term is defined under section 20025.2 because (1) the premium is calculated, timed, and paid strictly and exclusively as overtime pay; and (2) the FLSA "work period" calculations bear no relationship to the concept of "hours considered normal" under PERL.[9]

The City's first contention requires scant discussion. It is irrelevant that the premium is paid solely as a result of federal mandate, rather than voluntary agreement. Furthermore, as explained above, the fact that the FLSA premium is calculated, timed and paid as overtime pursuant to federal law has no bearing on PERS's definition of overtime. PERS is free to

---

[9] The trial court concluded that the FLSA premium was "expressly excluded from the PERS compensation base under the definition of 'overtime' in Gov[ernment] Code [section] 20025.2, because such pay does not relate to the 'hours considered normal' requirement of that section[.]"

define "overtime" in a manner distinct from federal law. Unlike the FLSA, PERS's definition focuses on hours in excess of those normally scheduled, not hours in excess of those actually worked. Our inquiry must be on whether the 10 hours above the federal maximum hour cutoff are hours in excess of those considered "normal."

Essentially, the City's position is that the "hours considered normal" for its firefighters are the 112 average hours paid every 2 weeks and that the 24-day FLSA work period is merely an artificial construct created solely as a "snapshot" device to capture FLSA premium data.

PERS guidelines provide that overtime is usually any service in excess of what is considered by the employer to be full time for the position. (*Service Employees Internat. Union* v. *Sacramento City Unified School Dist.* (1984) 151 Cal.App.3d 705, 710 [198 Cal.Rptr. 884].) We have not considered ourselves bound by an employer's assessment, however, where the employer's practice is inconsistent with the position asserted in litigation over its duty to make contributions. (*City of Fremont* v. *Board of Administration, supra,* 214 Cal.App.3d at p. 1032.) A comparison of the 12-day/112-hour duty cycle with the 24-day FLSA work period reveals that, of the 2, the FLSA work period is a more accurate reflection of the hours normally worked by the City's firefighters.

The 24-day FLSA work period is less of an artificial construct than the 112-hour "average" which the City uses to compute firefighters' pay. During this average period, firefighters will work from 96 to 120 hours. If the 112-hour cycle were used as the norm, the City would be able to exclude as overtime payment for those occasions firefighters work in excess of 112 hours, to their detriment. The City itself has acknowledged that the "hours considered normal" concept is not applicable to the 112-hour average "because the City firefighters' normal pay is on the basis of a 112-hour average for each and every pay period, disregarding the actual hours worked in a pay period . . . ." In addition, the 112-hour average is the result of a collective bargaining agreement between the City and the Sacramento Area Firefighters, Local 522. Like any union contract, it is subject to renegotiation and change. There is therefore no assurance that what is currently considered to be "average" for purposes of preparing firefighters' biweekly paycheck will continue to be so characterized when "final compensation" is to be determined. Indeed, this agreement appears to be merely a "snapshot" device for determining firefighters' pay, exclusive of FLSA overtime.

We conclude that, because the City's firefighters are normally required to work 192 hours during the 24-day work period, the FLSA premium is not

"overtime" under section 20025.2 and is therefore not automatically excluded from "compensation."

The City argues that, even if the FLSA premium is not within the overtime definition of section 20025.2, it should be excluded from "compensation" because the Legislature intended to exclude items which are not regularly recurring items of pay, to protect the system from distortion. The City cites examples from its exhibits to indicate that the premium is serendipitous, nonrecurring and irregular between individual firefighters.

It is true that the PERS system indicates a general intent to exclude certain items which are in the nature of lump-sum payments from compensation. For example, section 20022, subdivision (b)(7) specifically excludes from "compensation" "payments for unused vacation, sick leave, or compensating time off . . . ." In *Santa Monica Police Officers Assn.* v. *Board of Administration* (1977) 69 Cal.App.3d 96 [137 Cal.Rptr. 771], the decision of the Board to exclude retired police officers' lump-sum payments for unused sick leave and vacation time from pension computations was upheld, even though sick leave and vacation time are included within the statutory definition of compensation. (§ 20022, subd. (a)(1).) The court analyzed the state retirement system as an entity and concluded that the receipt of these benefits as a lump sum altered their characterization as compensation for the purposes of PERL. It determined that the "Legislature intended to exclude nonperiodic payments that did not apply to all employees similarly situated . . . ." (69 Cal.App.3d at p. 100.) The lump-sum payments were analogous to overtime pay because "an employee is entitled to receive such lump-sum payments when he has worked more time than he was expected to work." (*Ibid.*) In addition, because these lump-sum payments may or may not cover only a three-year period prior to retirement, their inclusion would distort the legislative scheme. (*Id.* at p. 101.)

The fact that FLSA premiums are paid and described as "special pay" in the firefighters' next paycheck does not render them lump-sum payments which distort the legislative scheme. As we noted in *City of Fremont, supra,* 214 Cal.App.3d at page 1034, *Santa Monica,* "involved nonperiodic lump-sum payments for unused sick leave and vacation time accrued over the length of the employees' careers. The distortion of the legislative scheme was in the fact that the relevant period for computing an employee's pension was the three years preceding retirement, and the lump sum payments in that case may not have covered only that period of time."

Unlike the situation in *Santa Monica,* FLSA overtime premiums are periodic and cannot be accumulated over a period of years. Indeed, under

federal law, such payments must be made "as soon after the regular pay period as is practicable." (29 C.F.R. § 778.106.) Because the premiums, by law, cannot accumulate over any appreciable length of time, they can hardly be characterized as lump-sum payments, even though they are not received in the same paycheck as non-premium pay. Furthermore, we have not allowed the lump-sum nature of a payment to undercut its characterization as "compensation" where it is apparent that it was received for performing normally required duties. (*City of Fremont, supra* [year-end cash outs of unused holiday compensatory time off].)

We conclude that FLSA overtime premium pay is "special compensation for performing normally required duties" under section 20022, subdivision (a)(8). ■ Although FLSA premiums are not specifically mentioned in section 20022,[10] the list of goods and services provided in section 20022 which may be included in "compensation" in the computation of benefits is not exhaustive. (*Rose v. City of Hayward, supra,* 126 Cal.App.3d at p. 943.) "[T]he key to coming within the meaning of Government Code section 20022, subdivision (a)(8), is that the compensation be 'special' and earned for nothing more than the performance of normally required duties." (*City of Fremont v. Board of Administration, supra,* 214 Cal.App.3d at pp. 1031-1032.) ■ The premium at issue here arises from the firefighters' normal work schedule of 192 hours and is accordingly earned for performing normally required duties. This result is not altered because, under FLSA, the premium will be paid only if the employee actually works the 182 hours and does not take personal time off.

■ Our conclusion is supported by the general intent of the retirement law that the provisions of the PERS are to be liberally construed in favor of pensioners if they are ambiguous or uncertain. (*Rose v. City of Hayward, supra,* 126 Cal.App.3d at p. 940.) ■ A contrary conclusion would result in the exclusion from compensation of payments made for performing 10 hours of normally required work. Such an exclusion, viewed over the

---

[10]The FLSA overtime premium is not discussed in section 20022, defining compensation. Research has disclosed one reference to the FLSA premium in PERL. Chapter 6, "Public Employer Contributions," section 20745 provides as follows: "Notwithstanding any other provision of this part, the state's contribution on premium compensation for planned overtime paid at the 'half-time' rate as part of the regular shift under the federal Fair Labor Standards Act or the Memorandum of Understanding of State Bargaining Units 7 and 8 are waived for the period April 15, 1985, through June 30, 1988. This section applies to State Bargaining Units 7 and 8 and becomes effective only if the board approves a waiver of employer contributions on the same premium compensation for the same period of time. If this section is approved by the board, benefits shall be calculated to include overtime paid at the one-half time rate." Although not a model of clarity, the section appears to be a legislative recognition of the obligation to make contributions based on premiums received for overtime which is paid for work performed under normally scheduled hours.

three-year "final compensation" period, would distort the accuracy of the compensation base.

*PERS's Interpretation Does Not Lead to Absurd Results*

Because of the manner in which FLSA premium pay is calculated, the City contends that, if the premium is construed as "compensation," it will indirectly result in the inclusion of both "overtime" and "standby" pay which are statutorily excluded from "compensation." (§ 20022, subd. (b)(9), (10).)[11] Contrary to the City's suggestion, under the facts of this case, PERS's interpretation will not lead to absurd or inequitable results.

The formula for determining the overtime premium under the FLSA is "one and one-half times the regular rate" at which the employee is employed. (29 U.S.C. § 207.) "Regular rate" of employment is defined "to include all remuneration for employment paid to, or on behalf of, the employee. . . ." (29 U.S.C. § 207.) The general rule is one of inclusion. The statute lists items deemed to be excluded from the "regular rate." "[A]ll remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined." (29 C.F.R. § 778.200(c).) FLSA expressly excludes the "extra compensation provided by a premium rate" (i.e., the extra one-half portion of overtime) from the regular rate calculation. ■■■■ The straight time received for hours in excess of the maximum workday, workweek or normal working hours, however, is included in the regular rate. (29 U.S.C. § 207(e).)[12]

■ The overtime which is excluded under the Government Code is that which is performed "in excess of hours considered normal," what the City refers to as "true overtime."[13] ■ The City argues that "true

---

[11] The trial court granted the City's request for summary adjudication that "by virtue of the FLSA 'regular rate of pay' calculation, the final calculation of the FLSA overtime premium includes items such as 'standby pay,' and true 'overtime' (in the sense of hours worked beyond those provided for under the fire duty schedule)."

[12] Congress intended to exclude overtime premium payments from the determination of the "regular rate of pay" under FLSA. "To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium—a pyramiding that Congress could not have intended." (*Bay Ridge Operating Co.* v. *Aaron, supra*, 334 U.S. at p. 464 [92 L.Ed. at p. 1517].)

[13] "[A]ll work in excess of that considered normal, . . . is excluded from the [PERS] computation of an employee's final compensation and thus from the determination of retirement benefits." (*Service Employees Internat. Union* v. *Sacramento City Unified School Dist., supra*, 151 Cal.App.3d at p. 710.) The straight time received for hours in excess of the normal schedule would be excluded under section 20025.2.

overtime," "in the sense of hours worked beyond those provided for under the normal fire duty schedule," is included in the calculation of the FLSA regular rate and is therefore included in the FLSA premium itself. Including the FLSA premium as compensation will indirectly allow overtime in violation of section 20025.2.

The City's point is well taken if the overtime definitions under FLSA and PERS coincide. It is, of course, possible (although not necessary) for the FLSA overtime premium to be paid for hours which are in excess of those considered to be "normal." For example, if the City's firefighters were normally scheduled to work 182 hours during the 24-day period but occasionally worked 192 hours, the FLSA premium paid for those additional 10 hours would be "true overtime." Under these facts, the definitions of overtime under FLSA and PERS would be coextensive and "true overtime" would be included in the FLSA premium via the regular rate.

This is not the case here. Curiously, the City itself clarifies that "true overtime" would not be payable for the 10 hours in excess of the FLSA 182-hour standard at issue here "because the employee's regular schedule calls for those hours." It is clear that the City is referring to some hypothetical overtime, rather than that at issue.

PERS has carefully limited the scope of its interpretation of "compensation" to FLSA premiums which are paid for hours considered normal. "Labor agreement" overtime in addition to the normally scheduled 192 hours does not fall within the scope of this interpretation. As discussed above, PERS is free to define "overtime" in a manner different from the FLSA definition, which best comports with its purposes. Where the maximum hour cutoff under the FLSA matches the normal work schedule of employees, the FLSA and PERS overtime definitions will coincide. Under the facts of this case, however, the FLSA premium is paid for normally scheduled working hours. PERS-excludable "true" overtime is that which is paid for hours performed in excess of 192 during the 24-day work period. Accordingly, PERS's interpretation will not indirectly result in the inclusion of "true overtime" in violation of section 20025.2.

Similarly, the City concedes that its argument pertaining to the indirect inclusion of "standby" pay is used "simply in an illustrative manner." The "standby" which is excluded from PERS compensation is "special compensation for additional services outside regular duties, such as standby pay, . . ." (§ 20022, subd. (b)(10).) There is no indication in the record that the City's firefighters are on standby schedules; to the contrary, under the stipulated facts, they are either completely on-duty or completely off-duty.

Furthermore, time spent on standby or "on call" does not necessarily find its way into FLSA's regular rate computation. **(11)** Even if there were some indication that the City's firefighters had standby obligations, whether those standby hours are compensable is a question of fact, to be determined by analyzing whether the " 'time is spent predominantly for the employer's benefit or for the employee's.' " (*Renfro* v. *City of Emporia, Kan.* (D.Kan. 1990) 729 F.Supp 747, 750 [holding firefighters' on-call time compensable time under FLSA], quoting *Armour & Co.* v. *Wantock* (1944) 323 U.S. 126, 133 [89 L.Ed. 118, 124, 65 S.Ct. 165].) "The test requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances." (*Ibid.*) If such hours are not compensable, of course, they would not be included in the "regular rate" computation.[14]

Like the situation with "true overtime," it is theoretically possible that standby pay could be indirectly included in "compensation" via the FLSA premium. Because neither is occurring under the facts of this case, we have no need to address whether such indirect inclusion would render PERS's interpretation clearly erroneous.[15]

### *PERS's Interpretation Is Not Inequitable*

Like its other fire suppression employees, the City's fire battalion chiefs are scheduled to work 192 hours for each 24-day FLSA period. The City argues that inclusion of the FLSA premium in the compensation base is inequitable because battalion fire chiefs, who are exempt from FLSA's overtime provisions, will receive proportionately less benefits on retirement.[16] We disagree.

---

[14] As noted in the regulations, "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call." (29 C.F.R. § 785.17.) "Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits." (29 C.F.R. § 553.221(d).)

[15] In similar hypothetical fashion, the City argues that allowance of the premium as "compensation" will foster disparate results between members, because FLSA provides employers the option of giving compensatory time off (CTO) in lieu of a cash premium. (29 U.S.C. § 207(o).) Where employees are represented by a union, CTO is allowed only where provided for pursuant to a collective bargaining agreement or memorandum of understanding between the agency and the union. (29 U.S.C. § 207(o)(2)(A).) As noted by the City's own expert, the "City and its safety recognized employee organizations have not agreed to the use of CTO."

[16] The trial court ruled that "inclusion of the FLSA overtime premium payments in the compensation base produces the incongruous result that employees in management classes who work the same number of hours will receive proportionately less benefits on retirement." With the exception of management battalion chief, all other fire department classifications

Since the close of briefing in this case, the United States Supreme Court has let stand a Ninth Circuit decision that fire battalion chiefs whose pay is subject to deduction for absences of less than a day are not "bona fide executives"[17] who are exempt from the overtime provisions of the FLSA. (*Abshire* v. *County of Kern, supra*, 908 F.2d 483.) The record before us is unclear whether City's fire battalion chiefs' pay is subject to deduction for absences of less than a day.

In any event, even assuming the City's battalion chiefs are bona fide executives whose pay is not subject to this type of deduction, PERS policy will not result in disparate benefits to PERS members who are similarly situated. Contrary to the City's suggestion, battalion chiefs are not similarly situated to nonmanagement employees. Although they perform fire suppression duties, they receive higher salaries.[18] The PERS system, via its definitions of "compensation earnable" and "final compensation" contemplates equality in benefits between members of the "same group or class of employment and at the same rate of pay." (§§ 20023, 20024.01.) While there is clearly an intent not to treat members within the same class and at the same pay dissimilarly, there is no intent to grant parity between employees of different classes and rates of pay, such as salaried and nonsalaried employees. Furthermore, as noted by amicus curiae, nonmanagement firefighters routinely receive a number of items of compensation which are PERS compensable under section 20022, subdivision (a), which are not available to management employees, such as seniority pay, hazard pay, and out-of-class pay.

### *PERS's Interpretation Does Not Violate Article XVI, Section 17(b) of California's Constitution*

Pursuant to article XVI, section 17 of the California Constitution, the state may not "in any manner loan its credit, nor shall it subscribe to, or be interested in the stock of any company, association, or corporation. . ." except mutual water companies where the stock is acquired or held for the purpose of furnishing a supply of water for public or governmental purposes. Despite this broad prohibition, the "Legislature may authorize the

---

(firefighter; apparatus operator; fire captain; fire investigator; and fire inspector) are covered by FLSA.

[17] In order to be considered a " 'bona fide executive' " exempt from the act, an employee must be paid on a salary rather than an hourly basis. In order to satisfy the salary test, an employee's pay cannot be subject to deductions for absences of less than a day. (*Abshire* v. *County of Kern* (9th Cir. 1990) 908 F.2d 483, 486, cert. den. __ U.S. __[112 L.Ed.2d 848, 111 S.Ct. 785].)

[18] The rates for battalion chiefs ranges from $16 to $27 per hour. Hourly rates for nonmanagement employees ranges from $8 to $14.

investment of moneys of any public pension or retirement system, subject to the following: [¶] . . . (b) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system." (Cal. Const., art. XVI, § 17, subd. (b).)[19]

The City argues that because PERS's interpretation will increase its costs, it violates section 17, subdivision (b), because it conflicts with the direction to "minimize employer contributions."[20] We disagree.[21] The City's argument is an unfounded expansion of the employer minimization provision which ignores its context in the article as a whole.

To date, there has been no judicial interpretation of the "employer minimization" provision, which became part of the California Constitution as a result of a 1984 initiative amendment. Prior to this amendment, section 17 permitted only limited types of investments. The thrust of the amendment was to give the Legislature power to authorize more expanded diversification of the investment of public pension funds. The other major change was to specify that the trust funds held by a public pension or retirement system are to be administered in a manner to best provide benefits to the participants of the plan. (See Historical Notes to Cal. Const., art. XVI, § 17, 3 West's Ann. Cal. Const. (1991 pocket supp.) pp. 150-157.) This latter change gave constitutional significance to the preexisting statutory mandate that the "Public Employees' Retirement Fund is a trust fund created and administered . . . , solely for the benefit of the members and retired members of the system and their survivors and beneficiaries." (§ 20200.) We agree with PERS that, even assuming article XVI, section 17 creates a duty to minimize employer contributions, it cannot be construed to require PERS to manage the retirement system in a way which would favor an employer over the beneficiaries to whom it owes a fiduciary duty.

---

[19] The other conditions imposed by California Constitution, article XVI, section 17 on the Legislature's authority to invest trust funds comprised of pension or retirement monies are (1) that the "assets . . . be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system"; (2) that the fiduciary "discharge his or her duties with respect to the system with the care, skill, prudence, and diligence . . ." of "a prudent person acting in a like capacity and familiar with these matters . . ." and (3) that the fiduciary diversify investments to minimize the risk of loss and maximize the rate of return. (§ 17, subds. (a),(c),(d).

[20] The projected added cost to the City for PERS contributions based on the FLSA overtime premium for the fiscal year 1990-1991 is $45,667 (Total FLSA premium payments of $288,299.52 at a PERS employer rate of 15.840).

[21] Because it denied PERS's motion for summary judgment, the trial court did not reach the constitutional issue.

The other conditions imposed on the Legislature's authority to invest pension or retirement monies by California Constitution, article XVI, section 17 make the primacy of this obligation clear. The "assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system." (§ 17, subd. (a).)[22] The fiduciary "shall discharge his or her duties with respect to the system with the care, skill, prudence, and diligence . . ." of "a prudent person acting in a like capacity and familiar with these matters . . ." and (3) that the fiduciary diversify investments to minimize the risk of loss and maximize the rate of return. (§ 17, subds. (c), (d).)

Under well-established rules of the law of trusts, a trustee's primary duty of loyalty is to the beneficiaries of the trust. "The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." (Rest.2d Trusts (1950) § 170, subd. (1), p. 364.) The trustee must not "be guided by the interest of any third person." (*Id.*, com. (q) to subd. (1).) This "unwavering duty of complete loyalty to the beneficiary of the trust" must be "to the exclusion of the interest of all other parties." (*NLRB* v. *AMAX Coal Co.* (1981) 453 U.S. 322, 329 [69 L.Ed.2d 672, 680, 101 S.Ct. 2789] [holding that employer-selected trustees of a trust fund created under section 302(c)(5) of the Labor Management Relations Act are not to be "representatives" of the employer "for the purposes of collective bargaining or the adjustment of grievances" under section 8(b)(1)(B) of the National Labor Relations Act].) Under the rule against divided loyalties, a "fiduciary cannot contend 'that although he had conflicting interests, he served his masters equally well or that his primary loyalty was not weakened by the pull of his secondary one.'" (*Id.* at p. 330 [69 L.Ed.2d at p. 680].)

Any duty PERS has to minimize employer contributions may not take precedence over its duty to the beneficiaries of the system. Accordingly, we hold that the "employer minimization" provision of California Constitution, article XVI, section 17 does not require PERS, as the fiduciary of the retirement system, to alter legitimate interpretations of "compensation" in a manner which is detrimental to its beneficiaries.

---

[22] This echoes the provision of the Government Code that the "board and its officers and employees shall discharge their duties with respect to the system solely in the interest of the participants and beneficiaries: [¶] (a) For the exclusive purpose of both of the following: [¶] (1) Providing benefits to members, retired members, and their survivors and beneficiaries. [¶] (2) Defraying reasonable expenses of administering the system. [¶] (b) By investing with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." (§ 20205.8.)

## DISPOSITION

In accordance with the foregoing, the judgment is reversed. Costs to appellant.

Carr, Acting P. J., and Sims, J., concurred.