[Civ. No. 48760. Second Dist., Div. Five. Apr. 18, 1977.]

SANTA MONICA POLICE OFFICERS ASSOCIATION,
Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent;
CITY OF SANTA MONICA, Real Party in Interest and Respondent.

---

**COUNSEL**

Silver, Streller & Wells, Silver & Wells and Stephen H. Silver for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Marilyn K. Mayer, Deputy Attorney General, for Defendant and Respondent.

Richard L. Knickerbocker, City Attorney, and Terrance Anderson, Assistant City Attorney, for Real Party in Interest and Respondent.

## OPINION

**KAUS, P. J.**—Plaintiff and appellant represents retired police officers formerly employed by real party in interest, City of Santa Monica (City). When they retired, these employees received lump-sum payments for unused sick leave and vacation time. Respondent Public Employees Retirement System (Board) did not—and does not—include such lump-sum payments in computing the retirement pensions to which these employees are entitled.[1] After an administrative hearing, the Board refused to include such payments, and this writ petition followed. The trial court ruled in favor of the Board and the City, concluding that under the applicable law, unused sick leave and vacation benefits are not to be included in computing pensions. We agree.

## DISCUSSION

We note that this case does not involve an employee's right to receive lump-sum payments for unused sick leave, a matter apparently left to the local public employer. (Cf. Lab. Code, § 227.3 [vacation pay]; see Gov. Code, § 18100 et seq. [state employees' sick pay].) This case involves only the inclusion of such amounts in the computation of pensions.

■ Local public agencies, such as the City here, may elect to participate in the state retirement system. (Gov. Code, § 20450 et seq.) Such agencies are then subject to various provisions of the State Retirement System Law.

First, the pension to which these employees are entitled is calculated to equal a certain fraction of the employee's "final compensation" multiplied by a fraction based on age and length of service. (Gov. Code, § 21252.01.)[2]

Second, the phrase, "final compensation," means "the highest average annual compensation earnable . . . during the three consecutive years of

---

[1]Petitioner's members are entitled to receive lump-sum or periodic payments, upon retirement, for unused sick time and vacation time under a judgment resulting from litigation the details of which are not known to us. The parties, however, have framed the issue to encompass the Board's duty to include such lump-sum payments in pension computations, regardless of the source of the employee's rights to such payments—practice, contract, or judgment.

[2]All references are to the Government Code. See, generally, section 21252 et seq., for employees other than "local safety members . . . ."

employment" preceding retirement. (§ 20024.01.) This section, however, defines only the relevant period to be used in determining the earnings factor used in computing a pension.

Third, the phrase "compensation earnable" means "the average monthly compensation" based on "the average time put in by members in the same group or class of employment and at the same rate of pay." (§ 20023.) This definition, although not defining the forms of compensation to be included, does tell us that the earnings factor is based on categories or groups of employees, rather than on individual earnings.

Finally, the word "compensation" means "remuneration paid in cash . . . for . . . services or for time during which the member is excused from work because of holidays, sick leave, vacation, . . ." (§ 20022.)

Petitioner contends that any item included in the definition of "compensation" (§ 20022) is also included in "final compensation" (§ 21252.01). Petitioner's theory is that since the statutory definition of "compensation" includes sick leave and vacation time, and since those statutes which describe the method of computing pensions also refer to "compensation," lump-sum payments for sick leave and vacation time must necessarily be included in computing pensions. ■ We disagree with petitioner's theory, which, by focusing exclusively on the definition of "compensation"—contained in chapter 1 of an 11-chapter law (pt. 3 of div. 5; § 20000 et seq.)—fails to consider the provisions of the State Retirement System as a coherent whole. Stated differently, although we can assume that for some purposes the concept of "compensation" includes lump-sum payments for sick leave, "compensation" within the meaning of the State Retirement System does not.

First, as noted above, a pension is generally based on two factors: compensation and time, or length of employment. (§ 21252.01.) Sick leave and vacation time are treated by the Legislature as a *time* factor. Thus, in "computing the service with which a member is entitled to be credited . . . time during which the member is excused from working because of holidays, sick leave, vacation, or leave of absence, with compensation, shall be included." (§ 20810.) And, when an employee has not used all the sick leave time to which he is entitled, such sick leave time is credited when the employee retires as "0.004 year of service credit for each unused day of sick leave . . . ." (§ 20862.8; see also § 20862.5.) The legislative intent was to assure that an employee, entitled to certain

time off from work, was nevertheless treated as if he had worked continuously.

Second, in defining "compensation earnable," section 20023 refers to "average monthly compensation" and "same rate of pay," suggesting, as noted, that the Legislature intended to exclude nonperiodic payments that did not apply to all employees similarly situated.[3] Specifically, the Legislature has excluded overtime pay from the compensation to be included in computing a pension. (§ 20025.2.)

Lump-sum payments for unused sick leave and vacation time, although not conventional instances of overtime pay, are analogous in that an employee is entitled to receive such lump-sum payments when he has worked more time than he was expected to work.[4] Besides, as noted, when the Legislature in section 20862.8 did specifically permit unused sick leave—extra work time—to be used in pension computations, it did so as a factor of time. Finally, given what appears to be a random policy concerning a public employee's right to accrue sick time and vacation time, the Legislature had no great incentive to enact specific legislation on the subject.[5]

Third, section 20024.01 limits the relevant period to "compensation earnable" during the three years preceding retirement. Lump-sum

---

[3] Although petitioner points out that other forms of "bonus" payments are included, "such as educational incentive bonus, longevity bonus, shooting pay, holiday pay," these amounts are paid periodically to all persons similarly situated, and are part of the employee's regular salary.

[4] Concededly, our analysis is not fool-proof. The inclusion of sick pay, vacation pay, and holiday pay under section 20022 and the exclusion of overtime pay under section 20025.2 would suggest the Legislature intended a computation based on a straight 52-week year. Nevertheless, the Board agreed that all holiday pay is included in the compensation from which deductions are made and on which pensions are computed, even though the City in this case has the odd policy of paying a police officer an extra day's pay for each holiday whether or not that officer worked the holiday. Other cities pay employees an extra day's pay for a holiday only if they work that day. Holiday pay is, however, paid in the month it is earned, so that the inclusion of such pay is consistent with the policy that only the last three years' earnings are relevant. (§ 20024.01, discussed in the text.)

[5] The employees here rely on a judgment. (*Ante,* fn. 2.) At the administrative hearing and at oral argument in the superior court, there was evidence and discussion about agency policies concerning accrued sick leave or vacation benefits. In Santa Monica, 130 days—earned at 12 days per year—of sick leave could be accumulated, at least for police officers. The City also permitted employees to accumulate 25 days of vacation time. The Attorney General's representative believed that her office allowed 40 days of vacation time to be accrued. The state does not pay lump-sum sick leave benefits.

payments may—or may not (*ante*, fn. 3)—cover only a three-year period. Certainly, amounts accrued over a lengthy period of time would totally distort the legislative scheme.

In short, we conclude that, viewing the State Retirement System as an entity, the Legislature intended to exclude lump-sum payments for unused sick leave and vacation time from pension computations.[6]

After the court ruled in favor of the Board, petitioner, in what was captioned a motion for a new trial, presented a new theory to the court, based on section 20025, which provides that the "entire compensation of a local member shall be included in any computation to be made . . . for service rendered . . . ." Section 20025 has nothing to do with the issue in this case. That section originally placed a ceiling on the *amount* of earnings that would be included in computing the pension—$416.66 a month. Over the years, the section was frequently amended and, in short, distinguishes between those employees subject to a contract in which the pension is based on the "entire compensation" and those employees subject to a contract which permits a maximum pension base of only $416.66. Section 20025 does not purport to define the forms of compensation to be included.

Finally, we note that petitioner relies on a Connecticut case for the proposition that unused sick days are to be included in the compensation on which the pension is based. (*Anderson* v. *Pension & Retire. Bd., City of Milford* (1974) 167 Conn. 352 [355 A.2d 283].) That case does not help. There, the issue was the interpretation of a provision in a collective bargaining agreement. Leaving aside the difference between determining the intention of parties to a contract and that of the Legislature, even the provision involved in the Connecticut case was different. There, the pension was based on an average annual pay, " 'including but not limited to base salary, holiday pay, longevity pay, overtime pay, etc., . . .' " (*Anderson* v. *Pension & Retire. Bd., City of Milford, supra,* 355 A.2d at p. 285.)

---

[6]The trial court first concluded that such payments constituted "compensation" (§ 20022) but did not constitute "compensation earnable" (§ 20023). An unintended effect of this ruling was that employees would be required to contribute a percentage of these lump-sum benefits to the pension fund even though the amounts would not be considered in computing the pension. (See §§ 20025, 20683.) The trial court then modified its ruling to conclude that such benefits are neither "compensation" nor "compensation earnable." Petitioner, although not acquiescing in the court's basic ruling, agreed that the modification was a desirable one.

The trial court correctly ruled that such lump-sum payments are not to be included in the compensation on which an employee's pension is based.

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 9, 1977. Bird, C. J., did not participate therein.