[No. C005429. Third Dist. Oct. 16, 1989.]

CITY OF FREMONT, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent;
FREMONT POLICE ASSOCIATION et al., Real Parties in Interest
and Respondents.

COUNSEL

Allen E. Sprague, City Attorney, and Lyle L. Lopus, Assistant City Attorney, for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Richard M. Frank and Daniel G. Stone, Deputy Attorneys General, for Defendant and Respondent.

Christopher D. Burdick, Cathleen A. Williams and Carroll, Burdick & McDonough for Real Parties in Interest and Respondents.

OPINION

EVANS, Acting P. J.—The City of Fremont (Fremont) appeals from a judgment denying its petition for a writ of mandate seeking to set aside a determination by the Board of Administration of the Public Employees' Retirement System (Board) that year-end cash outs of unused compensating time off in lieu of holiday pay for Fremont's police officers constitute "compensation" within the meaning of the Public Employees' Retirement Law (Gov. Code, § 20000 et seq.). Finding no error in that determination, we affirm the judgment.

Fremont is a local public agency that has elected to participate in the Public Employees' Retirement System (PERS). (See Gov. Code, §§ 20009, 20450.) As such, Fremont is subject to the Public Employees' Retirement Law and must contribute to the PERS retirement fund an amount equal to a certain percentage of the "compensation" it pays its member employees. (See Gov. Code, § 20740 et seq.) Member pensions are computed as a percentage of the employee's "final compensation" and are derived in part from employer contributions to the retirement fund. (See, e.g., Gov. Code, §§ 21252.01, 21252.5, 21252.6, 21294.) "Final compensation" is defined as "the highest average annual compensation earnable by a member" during a one- or three-year period immediately preceding the date of the member's retirement. (See Gov. Code, §§ 20024.01, 20024.2.) "Compensation" is defined as "(1) the remuneration paid in cash out of funds controlled by the employer, . . . in payment for [a member's] services or for time during which the member is excused from work because of holidays, sick leave, vacation, compensating time off, or leave of absence; . . . (8) any special compensation for performing normally required duties such as holiday pay

[and] bonuses (for duties performed on regular work shift) . . . and (12) any other payments the board may determine to be compensation." (Gov. Code, § 20022, subd. (a).) " 'Compensation' shall not include: . . . (9) payments for overtime, including pay in lieu of vacation or holiday; . . . and (15) any other payments the board may determine not to be compensation." (Gov. Code, § 20022, subd. (b).) "Overtime" is defined as "service performed by an employee as a member . . . in excess of the hours of work considered normal for employees on a full-time basis, and for which monetary compensation is paid." (Gov. Code, § 20025.2.)

At the time this matter was litigated, subdivision (b)(7) of Government Code section 20022 excluded from compensation "payments for lump-sum vacation or compensating time off upon termination of employment." (See Stats. 1983, ch. 639, § 1, eff. Sept. 1, 1983.) This exclusion was apparently derived from *Rose* v. *City of Hayward* (1981) 126 Cal.App.3d 926, 941-942 [179 Cal.Rptr. 287], and *Santa Monica Police Officers Assn.* v. *Board of Administration* (1977) 69 Cal.App.3d 96, 100-101 [137 Cal.Rptr. 771], which held lump-sum payments for unused sick leave and vacation time upon termination of employment excludable from compensation for purposes of computing pensions. Effective January 1, 1989, subdivision (b)(7) was amended to read "lump-sum payments for vacation, sick leave, or compensating time off." (Stats. 1988, ch. 761, § 1.) The parties do not discuss the effect of the 1988 amendment, nor do they suggest that the year-end cash outs at issue in this case might be excludable under subdivision (b)(7). Following the reasoning of *Santa Monica Police Officers Assn.* v. *Board of Administration, supra* (see discussion *post,* p. 1034), we believe that they would not.

Pursuant to a memorandum of understanding between Fremont and the Fremont Police Association (Association), Fremont credits its police officers at the beginning of each calendar year with 88 hours (11 days, which coincides with the number of legal holidays recognized by Fremont) of "holiday compensatory time-off . . . in lieu of payment of holiday pay during the calendar year." For officers who commence or terminate employment after the beginning of the calendar year, the holiday compensatory time account is prorated according to the number of legal holidays remaining in the year. The holiday compensatory time account is subject to depletion when (1) an officer takes off a regularly scheduled workday, whether or not a holiday; (2) an officer is ordered to take off a holiday that would otherwise have been a regularly scheduled workday for him or her; (3) an officer is given a "non patrol" assignment that automatically confers a paid day off on each legal holiday; or (4) a holiday falls while an officer is taking vacation time off. The time account is unaffected when (1) an officer takes a regularly scheduled day off and that day coincides with a holiday; (2) an officer works a regularly scheduled day that coincides with a holiday;

(3) an officer takes vacation time off during which a holiday does not fall; or (4) an officer takes overtime compensatory time off on a regularly scheduled workday. Unused holiday compensatory time off may not be carried over into the next calendar year; it must be cashed out, at the officer's straight time hourly rate, at the end of the calendar year in which it was credited.

Taking the position that, for purposes of the Public Employees' Retirement Law, year-end cash outs of its police officers' unused holiday compensatory time off are not "compensation" but more in the nature of payment for overtime, Fremont asked the Board for such a determination. (See Gov. Code, § 20133.) The Board decided that (1) to the extent a police officer has performed holiday work, Fremont's cash payment to him or her for unused holiday compensatory time off is holiday pay and, thus, is "compensation" for retirement purposes, and (2) cash payment for unused holiday compensatory time off in excess of holidays worked is a bonus received for performing normally required duties and, thus, is also "compensation" for retirement purposes. The superior court agreed with the Board's interpretation and application of the Public Employees' Retirement Law and denied Fremont's petition for a writ of mandate (Code Civ. Proc., § 1094.5).[1]

■ The parties do not dispute the material facts involved in this case; the matter was litigated on stipulated facts. Thus the question presented involves only the interpretation and application of the Public Employees' Retirement Law. It is a question of law on which we must make an independent determination. (See *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

■ In this regard, and contrary to the Association's argument at trial below and on appeal, it is immaterial whether Fremont should have proceeded by way of petition for a writ of traditional mandamus (Code Civ. Proc., § 1085) instead of administrative mandamus (Code Civ. Proc., § 1094.5). The proper interpretation and application of the law is ultimately a judicial function, no matter how invoked. (Cf. *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 382-386 [146 Cal.Rptr. 892].)

In *Rose* v. *City of Hayward, supra,* 126 Cal.App.3d 926, Hayward's police officers and fire fighters were regularly required to work on holidays, for which they received holiday pay, or twice their normal amount of pay, for the first five holidays of the year they worked. The court rejected Hayward's argument that this holiday pay was compensation based on overtime:

---

[1] Siding with the Board in this matter, the Association submitted argument at the administrative hearing as an "interested party." In its petition for writ of mandate, Fremont named the Association as "Real Party in Interest." We express no opinion on the propriety of this designation as opposed to whether, instead, the Association should have applied to the superior court to intervene as an interested party (see Code Civ. Proc., § 387).

"[Hayward's] Administrative Rule 2.2 plainly states that Hayward's police officers and fire fighters are regularly required to work on legal holidays. Accordingly, the hours worked by a police officer or a fire fighter on any 'legal holiday' designated by the city are not 'overtime work' because they are part of the normal hours of work for those employees, rather than in excess of such hours. Hence, the holiday pay provided to Hayward's police officers and fire fighters cannot be considered as compensation based on overtime and therefore cannot be excluded from the salary upon which their retirement benefits are based." (*Id.,* at p. 941.)

In response to *Rose,* and as a matter of clarifying the definition of "compensation" within the meaning of the Public Employees' Retirement Law, the Legislature, in 1983, amended Government Code section 20022 to add, inter alia, what is now subdivision (a)(8) (" 'Compensation' includes . . . any special compensation for performing normally required duties such as holiday pay . . . ."). (Stats. 1983, ch. 639, § 1, eff. Sept. 1, 1983.)

In this case, Fremont's police officers earn a compensatory day off when they work a regularly scheduled day that coincides with a legal holiday. To the extent the officers choose to receive cash rather than take the earned day off, this case is indistinguishable from *Rose*—in both cases, the officers are receiving an extra day's pay for working a regularly scheduled day that happens to fall on a holiday. Unquestionably this is "compensation" within the meaning of Government Code section 20022, subdivision (a)(8), as "holiday pay" earned for "performing normally required duties."

Unlike regular personnel, safety personnel cannot, as a matter of course, take off legal holidays as they occur. The holiday compensatory time benefit at issue in this case recognizes that fact, and Fremont readily acknowledges this when it says, "Being subject to working on holidays as regular work days is normal for police officers, so it is clear that holiday compensatory time is . . . a benefit earned by the normal performance of duties." Fremont also acknowledges that, since *Rose,* "it has been beyond dispute that pay received for the performance of all normally required duties—including regularly scheduled holiday work—constitutes compensation under PERS law." It follows, then, that any Fremont police officer who cashes out his or her earned compensatory time off receives "special compensation for performing normally required duties" (Gov. Code, § 20022, subd. (a)(8); see also Webster's New Internat. Dict. (3d ed. 1971) p. 2186, defining "special" as "supplemental to the regular: EXTRA"). Moreover, it is immaterial whether the compensation is called "holiday pay" (as in *Rose,* an extra day's pay for working a regularly scheduled day that happens to fall on a legal holiday) or a "bonus" ("money . . . given in addition to the usual compensation" (Webster's New Internat. Dict., *supra,* p. 252)); the key to coming within the meaning of Government Code section 20022, subdivision

(a)(8), is that the compensation be "special" and earned for nothing more than the performance of normally required duties.

Fremont contends that cash outs of unused holiday compensatory time off constitute "payments for overtime" and are therefore not "compensation" under the Public Employees' Retirement Law. (See Gov. Code, § 20022, subd. (b)(9).) This is so, Fremont argues, because a police officer with unused holiday compensatory time off has necessarily performed service "in excess of the hours of work considered normal . . . ." (See Gov. Code, § 20025.2.) Fremont relies on *Santa Monica Police Officers Assn.* v. *Board of Administration, supra,* 69 Cal.App.3d 96, in which the court held lump-sum payments upon retirement for unused sick leave and vacation time not to be "compensation" for purposes of computing pensions. Noting that Government Code section 20025.2 excludes overtime pay from the compensation to be included in computing a pension, the court reasoned, "Lump-sum payments for unused sick leave and vacation time, although not conventional instances of overtime pay, are analogous in that an employee is entitled to receive such lump-sum payments when he has worked more time than he was expected to work." (69 Cal.App.3d at p. 100.) Nonetheless, in a footnote not helpful to Fremont's position, the court acknowledged, without disapproval, the Board's policy of including all holiday pay in the compensation from which pensions are computed "even though [Santa Monica] has the odd policy of paying a police officer an extra day's pay for each holiday whether or not that officer worked the holiday. Other cities pay employees an extra day's pay for a holiday only if they work that day." (*Id.,* at p. 100, fn. 4.)

Noting PERS guidelines to the effect that overtime is usually any service in excess of what is considered by the employer to be full time for the position, Fremont argues that the Board must accept Fremont's determination of what constitutes full-time work for its police officers. (See *Service Employees Internat. Union* v. *Sacramento City Unified School Dist.* (1984) 151 Cal.App.3d 705, 710 [198 Cal.Rptr. 884].) Fremont argues that it intends and expects its police officers to use their earned holiday compensatory time off and that, if they do not, it follows that the officers have worked beyond that which Fremont considers full time. What Fremont says it intends and expects does not jibe, however, with giving its police officers an option to either take the time off or take the cash. If Fremont had intended and expected its police officers to use their earned holiday compensatory time off, then it should have eliminated the cash-out option.

Arguably, there is a conflict between Government Code section 20022, subdivision (a)(8), and section 20025.2 in that one could conceivably perform "normally required duties in excess of the hours of work considered

normal." There also appears some ambiguity and uncertainty when Government Code section 20022, subdivision (a)(8), includes "holiday pay" as PERS compensation while subdivision (b)(9) excludes "pay in lieu of . . . holiday." ■ If provisions of the Public Employees' Retirement Law are ambiguous or uncertain, they are to be liberally construed in favor of the pensioner. (*Rose* v. *City of Hayward, supra,* 126 Cal.App.3d at p. 940.) In such cases, the Board's interpretation of the Public Employees' Retirement Law is accorded great weight unless clearly erroneous. (*Campbell* v. *Board of Administration* (1980) 103 Cal.App.3d 565, 570-571 [163 Cal.Rptr. 198]; *City of Los Altos* v. *Board of Administration* (1978) 80 Cal.App.3d 1049, 1052 [144 Cal.Rptr. 351]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 578 [108 Cal.Rptr. 293].)

■ Prior to *Rose,* the Board did not consider holiday pay to be "compensation" unless the holiday was a paid day off. Subsequent to *Rose,* however, and contemporaneously with the 1983 amendment to Government Code section 20022, the Board began informing contracting public agencies that they should report as compensation any payment to employees for holidays that are normally required to be worked: "Holiday pay should be reported for both miscellaneous and safety members who work in positions that require scheduled staffing without regard to holidays. If these employees are paid over and above their normal salary when they work on a holiday, that additional compensation should be considered holiday pay and reported to PERS." In response to inquiries from contracting public agencies, PERS issued a circular that listed, in question-and-answer format, numerous illustrations, including the following: "4. Our current memorandum of understanding with our fire safety employees provides for an annual 'in-lieu' holiday pay which is paid in equal amounts each pay period. This pay is in return for the elimination of holidays for such employees. Is this holiday pay reportable? [¶] Yes; this should be reported to PERS as holiday pay. [¶] 5. Our police officers do not have any designated holidays for which they are given the day off. Each month they receive compensation for 9⅓ hours (14 paid holidays divided by 12 months equals 9⅓ hours) as a result. Is this pay subject to PERS? [¶] Yes; this would be holiday pay and would be reported to PERS. [¶] 6. Classified employees of the police department are not entitled to take holidays as they occur. Instead they shall receive holiday credit in advance of July 1 each year for the holidays specified. They do have a right to time off at straight salary for earned and unused holiday credit. In lieu of time off, such classified employees may elect to receive straight salary for up to five days of earned and unused holiday credit within each fiscal year. The holiday credits shall be taken or paid within the fiscal year. If the employees elect the straight salary, should it be reported to PERS? [¶] Yes; when the city pays the employees for the earned

and unused holiday credit, such payments would be holiday pay and reported to PERS."

Construing the Public Employees' Retirement Law in favor of Fremont's police officers and finding the Board's interpretation of the law in this respect not unreasonable, we conclude that the year-end cash outs of unused holiday compensatory time off at issue in this case constitute PERS "compensation."

Fremont contends this result is contrary to public policy in that a year-end cash out may skew the calculation of a retiring employee's pension, with the result that similarly situated employees may receive unfairly disparate pensions. Fremont cites *Santa Monica Police Officers Assn.* v. *Board of Administration, supra,* 69 Cal.App.3d 96, for the proposition that such a "lump-sum" payment "would totally distort the legislative scheme." (*Id.,* at p. 101; see Gov. Code, § 20022, subd. (b)(7).) *Santa Monica,* however, involved nonperiodic lump-sum payments for unused sick leave and vacation time accrued over the length of the employees' careers. The distortion of the legislative scheme was in the fact that the relevant period for computing an employee's pension was the three years preceding retirement, and the lump-sum payments in that case may not have covered only that period of time. (69 Cal.App.3d at pp. 100-101.) The payments at issue in this case, in contrast, are periodic (annual) and do not cover time outside the relevant period for computing pensions. As *Santa Monica* itself observed in contrasting that city's holiday pay scheme with its lump-sum payments for unused sick leave and vacation time, "Holiday pay is, however, paid in the month it is earned, so that the inclusion of such pay is consistent with the policy that only the last three years' earning are relevant." (*Id.,* at p. 100, fn. 4.) In like fashion, we find nothing inconsistent with the legislative scheme in classifying as "compensation" Fremont's year-end cash outs of unused holiday compensatory time off.

In any event, to the extent that Fremont's holiday compensatory time benefit is so unique that it is impossible to conveniently include it in or exclude it from any of the enumerated categories of "compensation" under Government Code section 20022, subdivisions (a)(12) and (b)(15) of that section authorize the Board to make the determination. Finding nothing patently unreasonable about that determination in this case, we conclude it must be upheld.

The judgment is affirmed.

Blease, J., and Marler, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1990.