[No. D041608. Fourth Dist., Div. One. Mar. 11, 2004.]

LARRY SALUS et al., Plaintiffs and Appellants, v.
SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION et
al., Defendants and Respondents.

COUNSEL

Silver, Hadden & Silver and Stephen Harley Silver for Plaintiffs and Appellants.

John J. Sansone, County Counsel, Nathan C. Northup, Valerie Tehan and Thomas J. Harron, Chief Deputy County Counsel, Deidre E. McGrath and William A. Johnson, Jr., Deputy County Counsel, for Defendants and Respondents.

OPINION

**BENKE, Acting P. J.**— ██ Under the County Employees Retirement Law of 1937 (CERL), Government Code[1] section 31450 et seq., retirement benefits are calculated on the basis of a retired employee's "final compensation," as that term is defined by sections 31460, 31461 and 31462 or 31462.1. As we explain more fully below, final compensation under CERL involves three requirements: compensation in the form of cash, rather than in the form of in-kind goods and services or time off; cash earned during a usual work period, as opposed to cash earned for overtime; and cash earned before retirement, rather than at or after retirement.

The cash payments a group of former county employees received at the time of their retirement in lieu of accrued sick leave were not final compensation under CERL. The payments plaintiffs and appellants Larry Salus et al. received were not cash payable before retirement because the accrued sick leave could not be converted to cash by appellants while appellants were still county employees.

Because the sick leave payments were not final compensation, defendant and respondent San Diego County Employees Retirement Association (the Retirement Association) was not required to include the sick leave payments in calculating appellants' retirement benefits. Accordingly, the trial court did not err in denying appellants' petition for a writ of mandate by which they sought to compel the Retirement Association to include the payments in calculating their retirement benefits.

### FACTUAL BACKGROUND

In 1998 the San Diego County Board of Supervisors decided the county would be better served by obtaining information technology (IT) from a private vendor rather than from the county's existing Department of Information Services (the DIS). Appellants were all employees of the DIS.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

The county recognized the transition to a private vendor would be accomplished over a period of time and during the transition period the county needed the DIS employees to continue in county service. The county further recognized that, in light of the fact DIS's functions were being transferred to a private vendor, DIS employees had a great deal of incentive to leave county service as soon as any new employment opportunity arose. Consequently, the board of supervisors adopted a compensation ordinance for the DIS employees which provided incentives for continued service during the transition period. The incentive included a series of increasing lump sum payments based on an employee's annual salary. The final and largest lump sum payment, 6 percent of an employee's annual salary, was payable on the date the county's IT services were transferred to the private vendor.[2]

In addition, the county agreed to pay the DIS employees an amount equivalent to one-half of their accrued sick leave at the time the private vendor took over the county's IT services. The sick leave payment was payable after the DIS employees left county service. Shortly after the county adopted the compensation ordinance, county officials explained to appellants the lump sum payments would be included in the calculation of their retirement benefits but the sick leave payments would not be included.

Appellants all left county service and were paid one-half the value of their accrued sick leave. The sick leave payments ranged from $2,874.50 to $41,580.55. Each appellant also either began receiving retirement benefits or elected deferred retirement. In calculating appellants' retirement benefits, the Retirement Association included the lump sum payments but did not include the sick leave payments.

## PROCEDURAL HISTORY

Appellants filed a petition for a writ of mandate (Code Civ. Proc., § 1085) in which they alleged the Retirement Association was required to include the sick leave payment in calculating the amount of their final compensation from the county and in turn the amount of their respective retirement benefits. The appellants named the county as a real party in interest.

After briefing by the parties, the trial court conducted a hearing and denied the petition. Upon entry of judgment, appellants filed a timely notice of appeal.

---

[2] The schedule of lump sum payments was as follows: on May 31, 1999, 2 percent of annual salary; on July 31, 1999, 2 percent of annual salary; on September 30, 1999, 4 percent of annual salary; on the date IT services were taken over by the private vendor, which was December 13, 1999, 6 percent of annual salary.

## DISCUSSION

### I

■ Where, as here, there is no dispute with respect to the underlying facts, the trial court's ruling on a petition for a writ of mandate presents questions of law only. (*Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132–133 [115 Cal.Rptr.2d 294].) Accordingly, we resolve those questions without any deference to the trial court's determination of them. (*Ibid.*)

### II

The parties agree appellants' retirement benefits are governed by the provisions of CERL. Section 31460 defines "compensation" for purposes of CERL as "the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages for participation in a deferred compensation plan . . . but does not include monetary value of board, fuel, laundry, or other advantages furnished to a member." Section 31461 in turn provides: " 'Compensation earnable' by a member means the average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay." Section 31462 states in part: " 'Final compensation' means the average annual compensation earnable by a member during any three years elected by a member at or before the time he files an application for retirement, or, if he fails to elect, during the three years immediately preceding his retirement."[3]

The Supreme Court has noted "there is a logical progression in the statutory framework under which a pension is calculated. Application of section 31460 is the first step, since an item must meet its broad definition of 'compensation' if it is also to fall within the narrower category of 'compensation earnable' defined in section 31461 and thus form the basis for the calculation of 'final compensation' on which the pension is based pursuant to section 31462 or 31462.1." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 493–494 [66 Cal.Rptr.2d 304, 940 P.2d 891] (*Ventura*).)

*Ventura* is the leading case defining final compensation under CERL. In *Ventura* a group of law enforcement officers argued their final compensation should include salary enhancements they received from their county employer

---

[3] Section 31462.1 permits counties to elect a one-year period of final compensation rather than the three-year period otherwise required by section 31462.

under the terms of a memorandum of understanding. The enhancements included a uniform allowance as well as bilingual, educational and motor-cycle bonuses. Of importance to us, the enhancements also included pay in lieu of annual leave. The annual leave provision provided: "After using a specified minimum days of annual leave, an employee could elect to receive pay in lieu of up to 40 hours of annual leave accrual and on accruing 400 hours could elect to be paid for another 40 hours." (*Ventura, supra,* 16 Cal.4th at p. 489, fn. 6.)

■ The court in *Ventura* emphasized that while only cash payments received by an employee qualify as compensation within the meaning of section 31640, when cash is paid in lieu of other in-kind benefits, those payments qualify as compensation. "The Legislature has recognized that some employees receive remuneration other than wages or salary but has concluded that if those 'advantages' are not paid in cash, their value need not be included in 'compensation' for purposes of computing a pension. It has not done so for cash payments made in lieu of providing the same advantages in kind. When paid in cash, the payment is remuneration and, as it is not excluded, it is 'compensation' under section 31460." (*Ventura, supra,* 16 Cal.4th at p. 497.) In *Ventura* the court found that the payments the officers received in lieu of annual leave were earnable compensation within the meaning of sections 31460 and 31461 for the self-evident reason the officers had the ability to receive the pay in cash rather than in time off. The court stated: "Plaintiffs concede that when annual leave is received as time off, it does not meet the statutory definitions of 'compensation' or 'compensation earnable.' When annual leave is taken as time off, the employee simply continues to receive regular salary or wages without the necessity of perform-ing services. Receipt of that pay is part of the employee's 'remuneration' for past services and is 'compensation.' When an employee elects to receive cash in lieu of accrued vacation and the wages or salary the employee would receive during the vacation period, the cash, like the vacation pay the employee would otherwise receive, is part of the employee's 'remuneration' for past services." (*Ventura, supra,* 16 Cal.4th at pp. 497–498.)

■ In contrast to the result reached in *Ventura,* the court in *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 474 [1 Cal.Rptr.3d 790] (review den. Aug. 25, 2003), found that under *Ventura* sick leave or annual leave which was not or could not be converted to cash *before* retirement is not final compensation. The court in *In re Retirement Cases* relied upon the requirement in sections 31462 and 31462.1 that final compensation be calculated no later than either the year or the three years "immediately preceding" retirement. "Plan members contend that it does not make sense to have a gap between the measurement of 'final compensation' and retirement. However, the language of the statute is that 'final compensation' is the 'average annual compensation earnable by a member during any year elected

by a member at or before the time he files an application for retirement, or, if he fails to elect, during the year *immediately preceding* his retirement.' [Citation.] This language is not ambiguous; it plainly excludes retirement and we will not rewrite the statute." (*In re Retirement Cases* at p. 475.) Thus, " '[w]here an employee cannot or does not elect to receive cash in lieu of the accrued time off prior to retirement, the benefit remains one of time rather than cash.' The right to a termination pay cash-out arises only upon retirement [citation], that is *separated* from service; the right does not arise prior to retirement or during service." (*Ibid.*, fn. omitted.)

In finding that post-termination payments for accrued leave are not final compensation, the court in *In re Retirement Cases* noted the same rule applies under the Public Employees' Retirement Law (PERL), Government Code section 20000 et seq., which in important respects is similar to CERL. In applying PERL, "The court in *Santa Monica Police [Officers Assn. v. Board of Administration* (1977) 69 Cal.App.3d 96, 100, 101 [137 Cal.Rptr. 771]] reasoned that lump-sums for termination pay were like overtime pay in that they both were accrued when the employee works more than expected, and the Legislature expressly excluded overtime pay from the compensation to be included in computing a pension. [Citation.] Thus, 'viewing the State Retirement System as an entity,' the court concluded that 'the Legislature intended to exclude lump-sum payments for unused sick leave and vacation time from pension computations.' [Citations.]" (*In re Retirement Cases, supra,* 110 Cal.App.4th at p. 476.)

As the facts in this case demonstrate, any departure from *In re Retirement Case* would, among other problems, create substantial differentials in the retirement benefits payable to employees who in all other respects would be entitled to similar benefits. Under the rule advanced by appellants, the employee who only received $2,874.50 in sick leave pay would have a substantially smaller pension than the employee who received $41,580.55 in sick leave pay, even if both were the same age, had the same years of service and earned the same annual salary. There is nothing in CERL which suggests the Legislature intended pensions should vary so widely on the basis of accrued and unused leave, rather than on the basis of age, years of service and salary. (See *Hudson v. Board of Administration* (1997) 59 Cal.App.4th 1310, 1323 [69 Cal.Rptr.2d 737] [payments made solely on condition that employee retire not part of final compensation, otherwise "spiking" of pension benefits would occur].)

■ In sum, postretirement payments for unused leave, such as appellants received, are not part of an employee's final compensation within the meaning of CERL.

## III

■ We reject appellants' contention that because their sick leave payouts were part of the county's effort to keep them in county service during the transition period, those payments should be regarded as part of their final compensation. As *In re Retirement Cases* makes clear, a public employer's decision to provide cash reimbursement for unused leave, after separation from service, does not alter the noncash nature of the leave. Such one-time post-termination payments cannot be considered part of final compensation without creating the risk of substantial distortion in the retirement benefits otherwise payable to employees. (See *Hudson v. Board of Administration, supra,* 59 Cal.App.4th at p. 1323.)

We are also unpersuaded by appellants' contention there is no meaningful distinction between the lump sum incentive payments they received, which the Retirement Association included in their final compensation, and the sick leave payments. The lump sum incentive payments were at all times cash compensation earned before retirement. The incentive payments were therefore at all times part of appellants' earnable compensation. (*Ventura, supra,* 16 Cal.4th at pp. 497–498.) In contrast, the sick leave benefit was a noncash benefit while appellants were in county service and not part of their earnable compensation. (*In re Retirement Cases, supra,* 110 Cal.App.4th at pp. 475–476.)

## IV

In the trial court the Retirement Association and the county argued that, in addition to the terms of CERL, appellants' claims were also barred by the terms of a class action settlement of similar claims asserted in *Stapel v. San Diego County Employees Retirement Association* (Super. Ct. San Diego County, No. 722450) (*Stapel*). The trial court rejected this contention because it found the compensation ordinance the board of supervisors enacted with respect to the DIS employees made the sick leave pay appellants received different from the leave pay which was the subject of dispute in *Stapel*. On appeal appellants contend that this ruling was inconsistent with the trial court's finding that the sick leave pay was not part of their final compensation.

Any inconsistency in the trial court's reasoning would not alter the impact of CERL. Because the trial court's ruling on the application of CERL is subject to de novo review here, the trial court's ruling on the impact of the *Stapel* settlement has no bearing on our interpretation of CERL. As we have explained under CERL, the sick leave payments are not final compensation.

## CONCLUSION

There is no dispute in the record appellants could not and did not receive cash for their unused sick leave until they separated from county service. Under the principles discussed in *Ventura* and the holding in *In re Retirement Cases*, the sick leave payments were therefore not part of their final compensation within the meaning of sections 31461 and 31461.2.

Judgment affirmed. Respondents to recover their costs.

McIntyre, J., and O'Rourke, J., concurred.

On April 8, 2004, the opinion was modified to read as printed above.