Filed 2/26/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GERRY SERRANO,<br><br>      Plaintiff and Appellant,<br><br>  v.<br><br>PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>      Defendant and Respondent. | C098392<br><br>(Super. Ct. No. 34-2022-80003935-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Chang, Judge. Affirmed.

Messing Adam & Jasmine and Lina Balciunas Cockrell for Plaintiff and Appellant.

Nossaman, Ashley K. Dunning and Alexander Westerfield for Defendant and Respondent.

1

Appellant Gerry Serrano took a leave of absence from being a police officer for the City of Santa Ana (City) to serve as president of the Santa Ana Police Officers Association (Association). Respondent Public Employees' Retirement System (CalPERS) determined certain special pay additives the City paid Serrano before and during his service as Association president could not be included in Serrano's pension. The Administrative Board of CalPERS (Board) and later the superior court affirmed the exclusion of most of these pay additives from Serrano's pension. Serrano appeals, arguing Government Code[1] section 3558.8 mandates he cannot lose any compensation, including pensionable compensation, while serving as the Association president. Serrano further challenges the specific exclusion of a confidential premium and holiday pay from his pensionable compensation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The City and Association had a memorandum of understanding detailing salaries and other benefits for covered police officers. The memorandum also detailed the City's agreement "to grant full-time release from duty for one . . . Association representative for the conduct of Association affairs" and this "Association [p]resident" must be paid "[full] salary including any salary additives, such as career incentive pay, confidential premium pay, benefit costs and pension cost." The "[c]onfidential [p]remium" the City was further required to pay to the Association president was "in lieu of 20 hours per pay period at time and one-half. . . . The parties agree[d] that the value of this premium shall be equivalent to 28 hours of pay at straight time per pay period. The rate paid shall be tied

---

[1]     Undesignated section references are to the Government Code.

[2]     Serrano makes a request for judicial notice of a decision issued by the Public Employment Relations Board. We deny this request because this is legal authority not requiring judicial notice for our review. (See *Gionfriddo v. Major League Baseball* (2001) 94 Cal.App.4th 400, 410, fn. 7 [" 'A request for judicial notice of published materials is unnecessary. Citation to the materials is sufficient' "].)

to the incumbent's rank. The [Association] agree[d] that the acceptance of said compensation as 'PERSable' is subject to [CalPERS] approval." The parties also agreed the Association would reimburse the City for "100[ percent] of the cost of the Association [p]resident." Elsewhere in the memorandum included provisions for officer overtime pay, stating, "The preferable method by which overtime shall be compensated is by monetary payment, at one and one-half (1 1/2) times the employee's regular rate of pay."

Serrano was elected Association president in April 2016 after having been a homicide detective sergeant. While serving as president, Serrano was on leave of absence from the City but the City continued to pay Serrano his sergeant's salary and related pay additives he earned while a homicide detective sergeant: detective premium, bilingual premium, educational incentive, holiday pay, and a uniform allowance. Serrano also started receiving the confidential premium as a pay additive under the memorandum of understanding.

In October 2020, CalPERS wrote a letter to the City determining the confidential premium was not pensionable for Serrano because he was on leave of absence. The City appealed this determination, which Serrano later joined. CalPERS subsequently reviewed the entirety of Serrano's pay and determined the other pay additives were also not pensionable.

At the administrative law hearing Serrano testified his responsibilities as president included managing the Association's benefits, meetings with city leaders, overseeing labor negotiations, and reviewing grievances. But nobody from the City required him to perform any duties for the City as a police officer. Serrano also said he worked 9:00 a.m. to 5:00 p.m. Monday through Friday and was "not required" to work on holidays nor required to wear a uniform.

The administrative law judge found not pensionable the confidential premium, detective premium, bilingual premium, holiday pay, and uniform allowance because

3

Serrano's work while on leave did not meet the requirements under the Public Employees' Retirement Law (§ 20000 et seq.) (Retirement Law). But the administrative law judge did find pensionable the education incentive because Serrano was entitled to it upon completion of a bachelor's degree. The Board adopted the administrative law judge's opinion on April 19, 2022.

Serrano filed a petition for writ of administrative mandamus with the trial court on August 24, 2022, asking it to vacate the Board's decision and order all pay additives included in his retirement calculation. The trial court denied the petition on March 30, 2023.

Serrano appeals.

## DISCUSSION

Serrano's overarching contention is his entitlement "to maintain the same level of compensation and benefits he had had as a [d]etective [p]olice [s]ergeant, including the level of pensionable compensation used to calculate his retirement benefits." Serrano does not challenge the exclusion of the detective premium, bilingual premium, and uniform allowance from his pension. Serrano instead argues he is entitled to the confidential premium "received after becoming [Association] president to fill the pensionability 'gap' left by excluding" the three other premiums. Serrano also challenges the administrative law judge's specific reasons denying pensionability of the confidential premium and holiday pay. We first address Serrano's overarching contention and then address the specific arguments for the two challenged pay additives, ultimately concluding there was no error excluding these pay additives from Serrano's pension.

### I

#### *Standard Of Review*

"To the extent an administrative decision involves a question of law, including the interpretation of statutes and application of judicial precedent, the reviewing court exercises independent judgment. [Citation.] In applying this standard on appeal, ' " 'we

4

review the matter without reference to the trial court's actions.  In mandamus actions, the trial court and appellate court perform the same function.' " ' " (*Neptune Management Corp. v. Cemetery & Funeral Bureau* (2024) 100 Cal.App.5th 1007, 1012.)

" ' " ' "As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " [Citation.]  "[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible." ' [Citations.]  If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end.  If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy." (*Earnest v. Commission on Teacher Credentialing* (2023) 90 Cal.App.5th 62, 74.)

We must also accord "great weight" to the Board's interpretation of statutes within its purview "unless clearly erroneous."  (*City of Fremont v. Board of Administration* (1989) 214 Cal.App.3d 1026, 1033.)  Nevertheless, "[w]here the material facts are not disputed and the question involves only the interpretation and application" of laws the Board oversees, "a question of law is presented on which the appellate court must make an independent determination."  (*City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1478.)  "When the statutory language is clear and unambiguous, there is no room for the Board's interpretation."  (*Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2018) 27 Cal.App.5th 607, 617.)

## II

*The Compensation Serrano Earned As A Police Sergeant Was Not*

*Entirely Pensionable While Serving As Association President*

Serrano argues section 3558.8 mandates he is entitled to the same pensionable compensation he earned as a police sergeant while serving as the Association president. We are not persuaded this statute requires the result Serrano desires.

## A

*The Retirement Law And The Meyers-Milias-Brown Act*

The Retirement Law " 'establishes [CalPERS], a retirement system for employees of the state and participating local public agencies. [CalPERS] is a prefunded, defined benefit plan [that] sets an employee's retirement benefit upon the factors of retirement age, length of service, and final compensation.' " (*DiCarlo v. County of Monterey* (2017) 12 Cal.App.5th 468, 480-481 (*DiCarlo*).) " '[F]inal compensation' " generally "means the highest annual average compensation earnable by a member during any consecutive 36-month period of employment preceding the effective date of his or her [or their] retirement." (§ 20037; see *Molina v. Board of Administration, etc.* (2011) 200 Cal.App.4th 53, 64-65.)

*Compensation* and *compensation earnable* are not synonymous. The Retirement Law defines " 'compensation' " as "the remuneration paid out of funds controlled by the employer in payment for the member's services performed during normal working hours" or when the member is excused from working because of "[h]olidays," "[l]eave of absence," and other covered excuses. (§ 20630, subd. (a).) When compensation is reported to the Board for pension calculations, however, it "shall be reported in accordance with [s]ection 20636 . . . and shall not exceed compensation earnable, as defined in [s]ection[] 20636." (§ 20630, subd. (b); see *DiCarlo*, *supra*, 12 Cal.App.5th at p. 481.) Under section 20636, subdivision (a), " 'compensation earnable' " means "the payrate and special compensation of the member." Payrate is the "normal monthly rate

6

of pay or base pay of the member . . . for services rendered on a full-time basis during normal working hours." (§ 20636, subd. (b)(1).) Whereas special compensation "includes a payment received for special skills, knowledge, abilities, work assignment, workdays or hours, or other work conditions." (§ 20636, subd. (c)(1).) Section 20636, subdivision (c)(6) further states: "The [B]oard shall promulgate regulations that delineate more specifically and exclusively what constitutes 'special compensation' as used in this section."

The Board issued a regulation under California Code of Regulations, title 2, section 571 (Regulation 571), which "exclusively identifies and defines special compensation items for members employed by [a] contracting agency."[3] (Regulation 571, subd. (a).) Only items listed "have been affirmatively determined to be special compensation. All items of special compensation reported to [CalPERS] will be subject to review . . . . [¶] . . . If an item[] of special compensation is not listed . . . then it shall not be used to calculate final compensation for that individual." (Regulation 571, subds. (c)-(d); see *DiCarlo*, *supra*, 12 Cal.App.5th at p. 482 [Regulation 571, subd. (a) "expressly provides that the list of items that constitute special compensation that must be reported to CalPERS is exclusive"].)

Section 3558.8 is part of a different statutory scheme called the Meyers-Milias-Brown Act (§ 3500 et seq.). This law is intended "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes." (§ 3500, subd. (a); see § 3500.5.) Effective June 2017, the Legislature added a new chapter to this act called the Public Employee Communication Chapter (Communication Chapter). (Assem. Bill No. 119 (2017-2018 Reg. Sess.); Stats.

---

**3**     The City is a contracting agency, which "means any public agency that has elected to have all or any part of its employees become members of [CalPERS] and that has contracted with the [B]oard for that purpose." (§ 20022.)

2017, ch. 21, § 2.)  Section 3558.8 was added to the Communication Chapter in January 2019.  (Sen. Bill No. 1085 (2017-2018 Reg. Sess.); Stats. 2018, ch. 893, § 1.)  Section 3558.8, subdivision (a) states:  "A public employer shall grant to public employees, upon request of the exclusive representative of that employee, reasonable leaves of absence without loss of compensation or other benefits for the purpose of enabling employees to serve as stewards or officers of the exclusive representative . . . .  Leave may be granted on a full-time, part-time, periodic, or intermittent basis."  Section 3558.8, subdivision (e) further provides:  "Compensation during leave granted under this section shall include retirement fund contributions required of the public employer as an employer.  The employee shall earn full service credit during the leave of absence."

B

*Section 3558.8 Does Not Prohibit Loss Of Pensionable Compensation*

Resolution of this issue depends on the definition of "compensation" and "benefits" in section 3558.8 because section 3558.8 prohibits union representatives from losing compensation and benefits while on leave representing the union.  But neither in section 3558.8 nor anywhere else in the Meyers-Milias-Brown Act, including the Communication Chapter, are compensation or benefits defined.  (See §§ 3501, 3555.5.)  And no other cases have interpreted section 3558.8.

We conclude the definition for compensation in the Retirement Law is appropriate for section 3558.8.  The Communication Chapter and the Retirement Law use compensation to relate to the same subject matter.  Section 3558.8 uses it generically in subdivision (a) but then in subdivision (e) compensation is used in the specific context of including "retirement fund contributions required of the public employer as an employer."  This overlaps with the Retirement Law, which details these rates of employer and member contributions to the fund.  (See § 20671 et seq. [member contributions chapter].)  Generally, " '[i]dentical language appearing in separate provisions dealing with the same subject matter should be accorded the same interpretation.' "  (*Kaanaana v.*

8

*Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 175.) This presumption is especially strong here where the Communication Chapter was enacted after the Retirement Law, so we must presume the Legislature was aware how compensation is used in the Retirement Law when describing compensation and retirement contributions in section 3558.8. (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1697 [" 'The Legislature is presumed to know the existing law and have in mind its previous enactments when legislating on a particular subject' "].) We therefore apply the Retirement Law to determine whether compensation necessarily includes pensionable compensation.

The Retirement Law treats differently *compensation* and *pensionable compensation*. Compensation under the Retirement Law is all payment for work performed during working hours or while excused from work. (§ 20630, subd. (a).) But compensation reported to the Board for pension purposes is limited to "compensation earnable" (§ 20630, subd. (b)), comprised of "payrate" and "special compensation" (§ 20636, subd. (a)). Using these definitions for section 3558.8, compensation in section 3558.8 cannot include special compensation, as Serrano argues it does. Compensation in section 3558.8 is instead limited to the base pay one receives for services performed during normal working hours.

This is also consistent with the common understanding of compensation. Compensation is typically defined similar to the Retirement Law's definition in section 20630 as payment for services rendered. (See Black's Law Dict. (9th ed. 2009) p. 322, col. 1 ["Remuneration and other benefits received in return for services rendered . . . . [¶] '*Compensation* consists of wages and benefits in return for services. It is payment for work' "]; Garner, Dict. of Modern Legal Usage (3d ed. 2011) p. 185, col. 2 ["remuneration . . . salary or wages"].) Whereas pension is generally understood as payments after retirement. (See Black's Law Dict. (9th ed. 2009) p. 1248, col. 2 [pension is "[a] fixed sum paid regularly . . . esp[ecially] by an employer as a retirement benefit"].)

9

Serrano does not present any authority indicating the common understanding of compensation includes pension calculations, from which payments are made after retirement.

The interpretation of *benefits* in section 3558.8 must also not include pensionable *special compensation* for similar reasons. Final compensation under the Retirement Law is tied to the member's highest compensation earnable before retirement. (*Molina v. Board of Administration, etc.*, *supra*, 200 Cal.App.4th at pp. 64-65.) Final compensation, and therefore a member's ultimate pension benefits, logically cannot be determined and disbursed until retirement. (Cf. *Cal Fire Local 2881 v. California Public Employees' Retirement System* (2019) 6 Cal.5th 965, 986 ["Just as each month of public service earns an employee a month's cash compensation, it also earns him or her [or them] a slightly greater benefit *upon retirement*" (italics added)].) The retirement *benefit* Serrano was entitled to before retirement was the City's contributions to CalPERS on behalf of Serrano. Section 3558.8, subdivision (e) states: "Compensation during leave granted under this section shall include retirement fund contributions required of the public employer as an employer." Subdivision (e) also mandates, "The employee shall earn full service credit during the leave of absence." Serrano does not contend he did not receive full service credit, nor that the *City*, as the public employer, did not make full fund contributions while Serrano was serving as Association president. The question is whether *CalPERS* was required to then include as a retirement benefit special compensation in his pension even if Serrano's work as Association president did not satisfy the Retirement Law's requirements. The memorandum of understanding acknowledged the distinction of these two issues by requiring the City to pay Serrano the confidential premium but leaving the question of whether this can be included in Serrano's pension to CalPERS approval. The generic use of *benefits* in section 3558.8 therefore required ongoing fund contributions and recognition of service credit, but did not require CalPERS to approve the compensation as pensionable.

10

Ultimately, the entitlement to reportable compensation for retirement purposes is governed by the Retirement Law and section 3558.8 does not alter this. " ' " ' "[A]ll presumptions are against a repeal by implication. [Citations.]" . . . Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes." ' " ' " (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955.) There is no language in section 3558.8 indicating it modifies the Retirement Law's pension calculations. Section 3558.8 does the opposite by implying confirmation of the Retirement Law. Section 3558.8, subdivision (e) specifically defines compensation to "include retirement fund contributions *required of the public employer* as an employer." (Italics added.) This indicates section 3558.8 is not independently detailing pension requirements but is relying on the Retirement Law because that is the authority dictating public employer retirement fund contribution requirements. Thus, we conclude section 3558.8 did not require the compensation Serrano earned as a police sergeant to be entirely pensionable while he served as Association president.

### III

*The Confidentiality Premium Was Not Compensation Earnable for Serrano*

In addition to arguing a general right not to lose any pensionable compensation while serving as the Association president, Serrano specifically challenges the Board finding the confidential premium is not pensionable for Serrano.

Within Regulation 571, the regulation the Board promulgated pursuant to section 20636, subdivision (c)(6) to define special compensation, "[c]onfidential [p]remium" is defined as: "Compensation to rank and file employees who are routinely and consistently assigned to sensitive positions requiring trust and discretion." (Regulation 571, subd. (a)(4).)

The administrative law judge found the confidential premium inapplicable to Serrano's pensionable compensation for three reasons: (1) It constituted nonpensionable

11

overtime; (2) Serrano's work did not meet the regulatory definition for the confidentiality premium because he was on leave; and (3) Serrano was an impermissible group of one. Serrano argues each of these reasons is unfounded. We address and agree with the first finding, concluding it constituted overtime.

Compensation for overtime is not pensionable under the Retirement Law. Both sections 20630 and 20636 limit reportable compensation to payment for services rendered "during normal working hours." (§§ 20630, subd. (a), 20636, subd. (c)(3).) Regulation 571, subdivision (b)(4) consequently limits special compensation for work "[p]erformed during normal hours of employment." Overtime, by definition, is not performed during normal hours of employment. (Black's Law Dict. (9th ed. 2009) p. 1214, col. 1 ["The hours worked by an employee in excess of a standard day or week"].)

Serrano does not dispute overtime is not pensionable, but insists the confidential premium was not for overtime. We disagree based on the language of the memorandum of understanding, which we also interpret based on its plain language. (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432 [" 'Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms' "].) The memorandum of understanding stated the confidential premium was "in lieu of 20 hours per pay period at time and one-half." The memorandum stated elsewhere overtime shall be compensated "at one and one-half (1 1/2) times the employee's regular rate of pay." "In lieu of" means "[i]nstead of or in place of; in exchange or return for." (Black's Law Dict. (9th ed. 2009) p. 858, col. 1.) Thus, from the terms of the agreement the Association president was to get the confidential premium *in exchange* for overtime pay that the Association president could have otherwise obtained working as an officer. The Retirement Law does not permit this compensation to be included in pension calculations.

Serrano contends the reference to overtime was to set the value of the confidential premium. Not so. The memorandum of understanding stated the premium is "in lieu of 20 hours per pay period at time and one-half," and "the value of this premium shall be equivalent to 28 hours of pay at straight time per pay period." This means the memorandum both acknowledged the confidential premium was in exchange for overtime and set the value of this premium. We therefore conclude the confidential premium could not be included in Serrano's compensation earnable because it was not for work during normal hours.

IV

*Holiday Pay Was Not Compensation Earnable for Serrano*

Serrano finally challenges the Board's decision finding nonpensionable his holiday pay.

Under Regulation 571, subdivision (a)(5), titled statutory items, holiday pay is defined as: "Additional compensation for employees who are normally required to work on an approved holiday because they work in positions that require scheduled staffing without regard to holidays. If these employees are paid over and above their normal monthly rate of pay for approved holidays, the additional compensation is holiday pay and reportable to [CalPERS]. [¶] For those employees with written labor agreements providing holiday credit and allowing employees to cash out accumulated holiday credit, the cash out must be done at least annually and reported in the period earned. If a written labor agreement allows an employee to accumulate holiday credit beyond the year in which it is earned and an employee later elects to cash out accumulated holiday credit, it is not compensation for [CalPERS] purposes."

The administrative law judge found Serrano's holiday pay was not pensionable because "[t]here is no requirement that he . . . work for the City on approved holidays or work a required staffing schedule without regard to holidays."

13

It is difficult to ascertain the specific basis for Serrano's challenge to this finding. Serrano states his "[h]oliday [p]ay should have been included in the calculation of his pension benefits because [Regulation] 571[, subdivision ](a)(5)'s definition *does not apply*." (Italics added.) Serrano "does not dispute that he was not required to work on holidays, nor was he in a position that required scheduled staffing without regard to holidays." But he explains, "[Regulation] 571[, subdivision ](a)(5) is titled '[s]tatutory [i]tems' and also refers to 'employees with written labor agreements providing holiday credit and allowing employees to cash out accumulated holiday credit.' Serrano receives this type of holiday pay, that is, credit for holidays that he can use either on the holiday or at another time. This holiday pay is pensionable pursuant to . . . section 20630[, subdivision ](a)."

We understand Serrano's argument as conceding his work does not meet the definition for holiday pay under Regulation 571, while also arguing he receives the type of holiday pay in Regulation 571 because it is pursuant to a labor agreement that permits employees to cash out holiday pay. We first accept Serrano's concession that he does not meet Regulation 571's definition because Serrano testified he was not required to work on any holidays. Second, the labor agreement language Serrano relies on is only part of Regulation 571, subdivision (a)(5) referring to how cash out must be handled to be pensionable. Serrano's holiday pay must satisfy the entire definition to qualify for pensionable special compensation, including that he must be normally required to work on approved holidays. This was not the case for Serrano.

We disagree with Serrano's assertion *City of Fremont v. Board of Administration*, *supra*, 214 Cal.App.3d 1026 requires a different result. In *City of Fremont*, a different panel of this court concluded "year-end cash outs of [police officers'] unused holiday compensatory time off" constituted pensionable compensation. (*Id*. at p. 1034.) Serrano highlights the finding in *City of Fremont* that the key to special compensation " 'is that the compensation be "special" and earned for nothing more than the performance of

14

normally required duties.' " (Quoting *id*. at pp. 1031-1032.) This rule is incorporated in Regulation 571, subdivision (a)(5), which requires holiday pay to be "[a]dditional compensation for employees who *are normally required to work* on an approved holiday." (Italics added.) But Serrano fails to explain how his work as Association president meets this definition. Serrano instead summarizes *City of Fremont* and then contends the holiday pay under the memorandum of understanding "is pensionable pursuant to [Regulation] 571[, subdivision ](a)(5) because it is contained in a written labor agreement, done at least annually and reported in the period earned. [¶] [Serrano] did not receive 'additional compensation' for his [h]oliday [p]ay beyond what is provided to all [Association] members. [Regulation] 571[, subdivision ](a)(5) is inapplicable." Serrano is again paradoxically asserting both applicability and inapplicability of Regulation 571. For reasons previously stated, the holiday pay as applied to Serrano must fully satisfy Regulation 571 and it does not.

As for section 20630, subdivision (a), that provision defines compensation for the Retirement Law. Compensation does include pay for time excused from work, including "[h]olidays." (§ 20630, subd. (a).) But that does not mean it is pensionable as special compensation of *holiday pay*; these are not the same concepts. The City could pay Serrano holiday pay as part of his compensation, but whether this compensation is pensionable depends on whether it is compensation earnable. That is not the case here. We therefore conclude Serrano's holiday pay was not pensionable compensation.

DISPOSITION

The judgment is affirmed.  Serrano shall pay costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
MAURO, J.

/s/_____
MESIWALA, J.